RECORD NO. 16-1200

IN THE

# United States Court of Appeals
## FOR THE FOURTH CIRCUIT

**TREADWELL ORIGINAL DRIFTERS, LLC,**
*Plaintiff-Appellant,*

**v.**

**ORIGINAL DRIFTERS, LLC,**
*Defendant-Appellee.*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA AT ALEXANDRIA

### JOINT APPENDIX

Cindy D. Salvo
THE SALVO LAW FIRM, P. C.
Suite 3C/3D
185 Fairfield Avenue
West Calwell, New Jersey 07006
(973) 226-2220 (Telephone)
csalvo@salvolawfirm.com

Counsel for Plaintiff-Appellant

James M. Slattery
BIRCH, STEWART, KOLASCH & BIRCH
Suite 100
8110 Gatehouse Road
Falls Church, Virginia 22040-0747
(703) 205-8000 (Telephone)
mailroom@bskb.com

Counsel for Defendant-Appellee

# **TABLE OF CONTENTS**

District Court Docket Entries ........................................................... 1

Complaint filed 5-4-15 ................................................................. 5

Defendant's Motion to Dismiss for Failure to State a
   Claim filed 9-30-15 ................................................................. 11

Attachments to Memo in Support of Motion to Dismiss, etc.
   filed 9-30-15 –

   Exh. A - Trademark Trial and Appeal Board Opinion
          Pinkney v. Treadwell's Drifters – 9/04 .................... 13

   Exh. C – Trademark Trial and Appeal Board Opinion –
          Treadwell Original Drifters v. Original
          Drifters – 3/15 ........................................................... 21

Declaration of Cindy D. Salvo in Opposition to Motion to
   Dismiss executed on 11-15-15 with attachment - ................. 49

   Exh. A – Memo from Salvo to Slattery dated 5-7-15 .............. 51

Order filed 12-16-15 ................................................................... 52

Attachment to Memo in Support of Defendant's Motion
   to Dismiss filed 1-15-16 –

   Declaration of Cindy Salvo in Further Opposition to Defen-
   dant's Motion to Dismiss filed 1-15-16 with Exhibits ............... 56

   Exh. A – Drifters – recording information – personnel ............ 59

   Exh. B – Drifters – Listing of personnel on each recording..... 62

   Exh. C – Excerpt of testimony of Charlie Thomas from
          9-18-03 Deposition ....................................................... 66

Table of Contents – Page 2 – Continued

Continuation of Exhibits attached to Motion to Dismiss –

Exh. D – Excerpt of Deposition of Willie Pinkney taken
6-28-07 ........................................................    70

Exh. E – Opinion of the DC Court of Appeals – In Re Claude
W. Roxborough decided 6-7-01 ..............................    73

Exh. F – Opposer's Trial Brief – Pinkney v. Treadwell –
Excerpt – 3-8-04 ........................................    77

Exh. G - U.S. Patent and Trademark – Motion to Dismiss
granted as conceded - Singer Management v.
Original Drifters ..........................................    80

Declaration of Tina Treadwell in Opposition to Defen-
dant's Motion to Dismiss with Exhibit filed 1-15-16 ........    81

Exh. A – Plaintiff's Exh. 37 - Stock Agreement – Drifters...    85

Order entered 1-28-16 ........................................    88

Notice of Appeal filed 2-25-16 ..............................    101

APPEAL,CLOSED,JURY,TRADEMARK

# U.S. District Court
## Eastern District of Virginia - (Alexandria)
## CIVIL DOCKET FOR CASE #: 1:15-cv-00580-LO-TCB

Treadwell Original Drifters, LLC v. Original Drifters, Inc.
Assigned to: District Judge Liam O'Grady
Referred to: Magistrate Judge Theresa Carroll Buchanan
Case in other court: 4th Circuit, 16-01200
Cause: 15:1071 Appeal of Decision of U.S. Patent &
Trademark Office

Date Filed: 05/04/2015
Date Terminated: 01/28/2016
Jury Demand: Plaintiff
Nature of Suit: 840 Trademark
Jurisdiction: Federal Question

**Plaintiff**

**Treadwell Original Drifters, LLC**          represented by **F. Joseph Brinig**
Law Offices of F Joseph Brinig
6409 Washington Blvd
Arlington, VA 22205
703-282-3455
Fax: 703-534-7831
Email: FJB@his.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Paula M. Potoczak**
Law Office of Paula M Potoczak
218 North Lee Street
Third Floor
Alexandria, VA 22314
(703) 519-3733
Fax: 703-519-3827
Email: pmplaw@earthlink.net
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Defendant**

**Original Drifters, Inc.**          represented by **James M. Slattery**
Birch Stewart Kolasch & Birch LLP
8110 Gatehouse Rd
PO Box 747
Falls Church, VA 22040-0747
(703) 205-8000
Email: jms@bskb.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

| Date Filed | # | Docket Text |
| --- | --- | --- |

| 05/04/2015 | 1 | COMPLAINT with Jury Demand against Original Drifters, Inc. ( Filing fee $ 400, receipt number 14683051187.), filed by Treadwell Original Drifters, LLC. (Attachments: # 1 Civil Cover Sheet, # 2 Receipt)(klau, ) (Entered: 05/06/2015) |
| 05/04/2015 | 2 | Summons Issued and given to attorney for service by SPS as to Original Drifters, Inc.. (klau, ) (Entered: 05/06/2015) |
| 09/14/2015 | 3 | Consent MOTION for Extension of Time to File Answer by Original Drifters, Inc.. (Attachments: # 1 Proposed Order)(Slattery, James) (Entered: 09/14/2015) |
| 09/14/2015 | 4 | Financial Interest Disclosure Statement (Local Rule 7.1) by Original Drifters, Inc.. (Slattery, James) (Entered: 09/14/2015) |
| 09/14/2015 | 5 | ORDER granting 3 Motion for Extension of Time to Answer re 1 Complaint Original Drifters, Inc. answer due 10/1/2015. Signed by Magistrate Judge Theresa Carroll Buchanan on 9/14/15. (gwalk, ) (Entered: 09/14/2015) |
| 09/15/2015 | 6 | SUMMONS Returned Executed by Treadwell Original Drifters, LLC (dvanm, ) (Entered: 09/15/2015) |
| 09/30/2015 | 7 | MOTION to Dismiss for Failure to State a Claim by Original Drifters, Inc.. (Attachments: # 1 Proposed Order)(Slattery, James) (Entered: 09/30/2015) |
| 09/30/2015 | 8 | Memorandum in Support re 7 MOTION to Dismiss for Failure to State a Claim filed by Original Drifters, Inc.. (Attachments: # 1 Declaration of James M. Slattery, # 2 Exhibit A, # 3 Exhibit B, # 4 Exhibit C, # 5 Exhibit D-Part 1, # 6 Exhibit D-Part 2, # 7 Exhibit E)(Slattery, James) (Entered: 09/30/2015) |
| 10/01/2015 |   | Notice of Correction re 7 MOTION to Dismiss for Failure to State a Claim The filing user has been notified to file a Notice of Hearing Date. (Entered: 10/01/2015) |
| 10/05/2015 | 9 | Motion to appear Pro Hac Vice by Cindy Salvo and Certification of Local Counsel Paula M. Potoczak Filing fee $ 75, receipt number 0422-4666037. by Treadwell Original Drifters, LLC. (Potoczak, Paula) (Entered: 10/05/2015) |
| 10/06/2015 | 10 | ORDER granting 9 Motion for Pro hac vice. Signed by District Judge Liam O'Grady on 10/6/15. (klau, ) (Entered: 10/07/2015) |
| 10/19/2015 | 11 | AGREED ORDER that, on or before November, 16, 2015, the Treadwell Original Drifters shall serve and file its Opposition to the Defendant Original Drifters' Motion to Dismiss. ORDERED that on or before November 23, 2015 the Defendant shall serve and file its Reply, if any, to the Opposition to the Motion to Dismiss. Signed by Magistrate Judge Theresa Carroll Buchanan on 10/19/15. (klau, ) (Entered: 10/19/2015) |
| 11/16/2015 | 12 | Memorandum in Opposition re 7 MOTION to Dismiss for Failure to State a Claim filed by Treadwell Original Drifters, LLC. (Attachments: # 1 Affidavit Declaration of Cindy Salvo, # 2 Exhibit Exhibit A, # 3 Proposed Order)(Potoczak, Paula) (Entered: 11/16/2015) |
| 11/23/2015 | 13 | REPLY to Response to Motion re 7 MOTION to Dismiss for Failure to State a Claim filed by Original Drifters, Inc.. (Slattery, James) (Entered: 11/23/2015) |
| 11/23/2015 | 14 | Notice of Hearing Date set for 12/18/2015 re 7 MOTION to Dismiss for Failure to State a Claim (Slattery, James) (Entered: 11/23/2015) |

| 11/24/2015 |    | Set Deadline as to 7 MOTION to Dismiss for Failure to State a Claim. Motion Hearing set for 12/18/2015 at 10:00 AM in Alexandria Courtroom 700 before District Judge Liam O'Grady. (jlan) (Entered: 11/24/2015) |
|---|---|---|
| 12/16/2015 | 15 | ORDER the parties to submit additional briefing on the question of issue preclusion. The briefs should separately explain why or why not each of the above four rulings precludes this Court from considering the current action. The Defendant shall submit a brief within fourteen (14) days after the issuance of this order ---- After conferring with Plaintiff, the Defendant shall file a "Notice of Hearing" setting the motion for a Friday at 10:00 a.m. during the month of January 2016 (see order for details). Signed by District Judge Liam O'Grady on 12/16/15. (klau, ) (Entered: 12/17/2015) |
| 12/17/2015 |    | Per LO chambers motions set for 12/18/15 are to be re-noticed (clar, ) (Entered: 12/17/2015) |
| 12/30/2015 | 16 | Memorandum in Support re 7 MOTION to Dismiss for Failure to State a Claim *or in the Alternative a Motion for Summary Judgment* filed by Original Drifters, Inc.. (Attachments: # 1 Proposed Order)(Slattery, James) (Entered: 12/30/2015) |
| 12/30/2015 | 17 | Notice of Hearing Date set for 01/29/2016 re 7 MOTION to Dismiss for Failure to State a Claim , 8 Memorandum in Support, 16 Memorandum in Support (Slattery, James) (Entered: 12/30/2015) |
| 12/31/2015 |    | Set Deadline as to 7 MOTION to Dismiss for Failure to State a Claim. Motion Hearing set for 1/29/2016 at 10:00 AM in Alexandria Courtroom 700 before District Judge Liam O'Grady. (jlan) (Entered: 12/31/2015) |
| 01/07/2016 | 18 | MOTION for Extension of Time to File Response/Reply *to Defendant's Motion to Dismiss or in the Alternative for Summary Judgment* by Treadwell Original Drifters, LLC. (Attachments: # 1 Proposed Order)(Potoczak, Paula) (Entered: 01/07/2016) |
| 01/08/2016 |    | Notice of Correction re 18 MOTION for Extension of Time to File Response/Reply *to Defendant's Motion to Dismiss or in the Alternative for Summary Judgment* The filing user has been notified to file a Notice of Hearing Date or a Notice of Waiver of Oral Argument. (kgra, ) (Entered: 01/08/2016) |
| 01/08/2016 | 19 | ORDER granting 18 Motion for Extension of Time to File Response/Reply. The deadline for filing the Opposition to the Motion to Dismiss or in the alternative for Summary Judgment is extended to Friday, January 15, 2016. Signed by District Judge Liam O'Grady on 1/8/2016. (dvanm, ) (Entered: 01/08/2016) |
| 01/10/2016 | 20 | Waiver of re Notice of Correction, *Notice of Waiver of Hearing* by Treadwell Original Drifters, LLC (Potoczak, Paula) (Entered: 01/10/2016) |
| 01/13/2016 | 21 | MOTION for Extension of Time to File Response/Reply *to Plaintiff's Opposition to Defendant's Motion to Dismiss or in the Alternative for Summary Judgment* by Original Drifters, Inc.. (Attachments: # 1 Proposed Order)(Slattery, James) (Entered: 01/13/2016) |
| 01/14/2016 | 22 | ORDER re 21 MOTION for Extension of Time to File Response/Reply *to Plaintiff's Opposition to Defendant's Motion to Dismiss or in the Alternative for* |

| | | |
|---|---|---|
| | | *Summary Judgment* filed by Original Drifters, Inc. ORDERED that Defendant Original Drifters, Inc. shall file its Reply on or before January 22,2016. Signed by Magistrate Judge Theresa Carroll Buchanan on 1/14/16. (klau, ) (Entered: 01/15/2016) |
| 01/15/2016 | 23 | Opposition to 16 Memorandum in Support *of Defendant's Motion to Dismiss or in the Alternative for Summary Judgment* filed by Treadwell Original Drifters, LLC. (Attachments: # 1 Affidavit Declaration of Cindy Salvo, # 2 Exhibit DecCindySalvoExA, # 3 Exhibit DecCindySalvoExB, # 4 Exhibit DecCindySalvoExC, # 5 Exhibit DecCindySalvoExD, # 6 Exhibit DecCindySalvoExE, # 7 Exhibit DecCindySalvoExF, # 8 Exhibit DecCindySalvoExG, # 9 Affidavit DecLarryMarshak, # 10 Exhibit DecLarryMarshakExA, # 11 Exhibit DecLarryMarshakExB, # 12 Affidavit DecTinaTreadwell, # 13 Exhibit DecTinaTreadwellExA)(Potoczak, Paula) (Entered: 01/15/2016) |
| 01/21/2016 | 24 | REPLY to Response to Motion re 7 MOTION to Dismiss for Failure to State a Claim *or in the Alternative A Motion for Summary Judgment* filed by Original Drifters, Inc.. (Slattery, James) (Entered: 01/21/2016) |
| 01/28/2016 | | Per LO chambers motions set for 1/29/16 on the pleadings (clar, ) (Entered: 01/28/2016) |
| 01/28/2016 | 25 | ORDER that 7 Motion to Dismiss or, in the alternative, for Summary Judgment is GRANTED. ORDERED that, pursuant to Rule 56 of the Federal Rules of Civil Procedure, the Complaint is DISMISSED WITH PREJUDICE. Signed by District Judge Liam O'Grady on 1/28/16. (klau, ) (Entered: 01/29/2016) |
| 02/24/2016 | 26 | NOTICE by Treadwell Original Drifters, LLC re 25 Order on Motion to Dismiss for Failure to State a Claim, *Notice of Appeal* (Potoczak, Paula) (Entered: 02/24/2016) |
| 02/24/2016 | | Notice of Correction re 26 NOTICE, The filing user has been notified to refile the document using Notice of Appeal and pay the filing fee electronically. (klau, ) (Entered: 02/24/2016) |
| 02/24/2016 | 27 | NOTICE OF APPEAL as to 25 Order on Motion to Dismiss for Failure to State a Claim, by Treadwell Original Drifters, LLC. Filing fee $ 505, receipt number 0422-4871638. (Brinig, F.) (Entered: 02/24/2016) |
| 02/25/2016 | 28 | Transmission of Notice of Appeal to US Court of Appeals re 27 Notice of Appeal (All case opening forms, plus the transcript guidelines, may be obtained from the Fourth Circuit's website at www.ca4.uscourts.gov) (klau, ) (Entered: 02/25/2016) |
| 02/25/2016 | 29 | USCA Case Number 16-1200 4th Circuit, Case Manager A. Carlheim for 27 Notice of Appeal filed by Treadwell Original Drifters, LLC. (kgra, ) (Entered: 02/25/2016) |

| PACER Service Center |
|---|
| **Transaction Receipt** |
| 04/25/2016 11:59:54 |
| PACER |

FILED

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
ALEXANDRIA DIVISION

2015 MAY -4  P 4: 01

CLE~~~~ ~~~~ ~7
ALE~~~~~~~~ ~~

-----------------------------------------------

TREADWELL ORIGINAL DRIFTERS,
LLC,
c/o Tina Treadwell
1327 W. Valleyheart Drive
Burbank, California 91506

     Plaintiff,

v.

ORIGINAL DRIFTERS, INC.

Serve: Ida Maxine Porter
  Registered Agent
  Original Drifters, Inc.
  9016 Marble Drive
  Las Vegas, Nevada

     Defendant.

-----------------------------------------------

:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:

Civil Action No.: 1:15-cv-580
ZO /TCB

## COMPLAINT FOR APPEAL AND *DE NOVO* REVIEW OF DECISION OF TRADEMARK TRIAL AND APPEAL BOARD

Plaintiff Treadwell Original Drifters, LLC ("Plaintiff" or "Treadwell") for its

Complaint against Defendant Original Drifters, Inc. ("Defendant" or "ODI"), alleges as

follows:

### NATURE OF ACTION

1.  This is a civil action seeking judicial review of a final decision of the

Trademark Trial and Appeal Board ("TTAB"), an administrative agency of the United

States Patent and Trademark Office ("USPTO"), pursuant to Section 21(b) of the U.S.

Trademark Act of 1946 ("Lanham Act"), 15 U.S.C. §1071(b)(1). In that decision, the

TTAB dismissed Treadwell's petition for cancellation of a registration owned by ODI for the mark BILL PINKNEY'S ORIGINAL DRIFTERS.

2.    On March 5, 2015 a TTAB panel dismissed Plaintiff's trademark opposition based on U.S. Federal Trademark Registration No: 3,649,096.  In dismissing Plaintiff's opposition, the TTAB erroneously found that Plaintiff had failed to prove ownership rights in the mark that were prior to those of ODI and its predecessor-in-interest, Bill Pinkney.

### THE PARTIES

3.    Treadwell Original Drifters, LLC is a California limited liability company with its principal place of business in Los Angeles, California.

4.    Upon information and belief, Original Drifters, Inc. is a Nevada corporation with its principal place of business at 9016 Marble Drive, Las Vegas, Nevada.

### JURISDICTION AND VENUE

5.    This is an action for judicial review of a final decision of the TTAB under Section 21(b)(1) of the Lanham Act, 15 U.S.C. §1071(b)(1).

6.    This Court has original jurisdiction pursuant to 28 U.S.C. §§1331 and 1338 as it involves claims presenting federal questions under 15 U.S.C. §§1071(b)(1) and 1121(a).  These sections provide that a party to an opposition proceeding may have remedy by a civil action, and a court may adjudge that the application involved be rejected or may order such other relief as the issues in the proceeding require.

7.     Venue is proper in the Eastern District of Virginia pursuant to 15 U.S.C. 1071(b)(4), as the parties reside in a plurality of districts not embraced within the same state.

## FACTUAL BACKGROUND

8.     The Drifters were one of the great vocal groups in the early days of rock and roll.

9.     The lineup of performers for The Drifters was constantly changing.

10.     One of these performers was Bill Pinkney, the predecessor-in-interest to the Defendant.

11.     As the band members came and went, the one element that always remained the same was the control exercised over the group by the family of George Treadwell and the companies run by the Treadwell Family, including, most recently, Plaintiff.

12.     George Treadwell was The Drifters' manager from 1953 until his death in 1967. After his death, his wife Faye Treadwell assumed that role and now, since her death, daughter Tina Treadwell is Plaintiff's President. It is the Treadwells who control, and have always controlled, The Drifters, their sound and their business dealings, regardless of what performers made up the composition of the group.

13.     The various performers who made up the composition of The Drifters were all employees of companies controlled by the Treadwell Family and all of them signed employment agreements acknowledging their employment status and acknowledging that they did not own any rights in THE DRIFTERS Mark. This included Mr. Pinkney.

3

7

14.    Plaintiff sought to cancel the registration owned by ODI for the mark BILL PINKNEY'S ORIGINAL DRIFTERS, Cancellation No. 92052155 (the "Cancellation Proceeding").

15.    On or about March 5, 2015, the TTAB reached a decision (the "Decision"), dismissing the Cancellation Proceeding, contending that Plaintiff had not demonstrated, by a preponderance of the evidence, ownership right in the mark THE DRIFTERS that was prior to that of ODI's predecessor-in-interest, Bill Pinkney. A copy of the Decision is attached hereto as Exhibit A.

16.    Plaintiff believes that the Decision was erroneous and hereby appeals.

17.    The decision of the TTAB is erroneous because it failed to credit important evidence which showed that Plaintiff and the Treadwell Family had prior ownership rights to ODI and/or Mr. Pinkney.

18.    Plaintiff seeks *de novo* review of the TTAB Decision pursuant to Section 21(b) of the Lanham Act, 15 U.S.C. §1071.

<u>COUNT ONE
(REQUEST FOR REVERSAL OF TTAB DECISION)</u>

19.    Plaintiff repeats and realleges its responses to the previous paragraphs as if set forth at length herein.

20.    Plaintiff is dissatisfied with the Decision of the TTAB and its erroneous conclusion that ODI and/or Mr. Pinkney had rights to the Mark that were prior to the Treadwells' rights.

21.    The TTAB Decision should be reversed and vacated, and an order should be entered directing the USPTO to reverse its decision and sustain Plaintiff's opposition against registration of ODI's U.S. Trademark No: 3,649,096.

4

## NOTICE OF NEW EVIDENCE AND REQUEST FOR *DE NOVO* REVIEW

22.    Plaintiff intends to: (a) introduce evidence in this case beyond that which was considered by the USPTO; (b) develop and pursue such new evidence to the fullest extent permitted by the Federal Rules of Civil Procedure and Federal Rules of Evidence; and (c) request that this Court undertake *de novo* review for any factual disputes in this case.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for relief as follows:

1.    That the Court reverse the March 5, 2015 Decision in the matter of Treadwell Original Drifters, LLC v. Original Drifters, Inc.

2.    That the Court order the United States Patent and Trademark Office to deny registration for U.S. Trademark Application No. 3,649,096.

3.    That the Court grant such other relief as it deems just and proper.

Dated:    May 4, 2015

## JURY DEMAND

Plaintiff hereby demands a trial by jury on all issues so triable pursuant to Rule 38 of the Federal Rules of Civil Procedure.

Respectfully submitted,

By: _____
Paula M. Potoczak

Law Office of Paula M. Potoczak (VSB No. 23208)
218 North Lee Street, 3rd Floor
Alexandria, Virginia  22314
703-519-3733 (Telephone)
(703) 519-3827 (Facsimile)
PMPLaw@Earthlink.net

5

THE SALVO LAW FIRM, P.C.
Cindy D. Salvo, Esq.*

185 Fairfield Avenue, Suite 3C/3D
West Caldwell, New Jersey  07006
(973) 226-2220 (Telephone)
(973) 900-8800 (Facsimile)
csalvo@salvolawfirm.com

*Subject to Admission Pro Hac Vice

Attorneys for Plaintiff,
Treadwell Original Drifters, LLC

THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | | |
|---|---|---|
| TREADWELL ORIGINAL DRIFTERS, LLC | ) | |
| | ) | |
| | ) | |
| Plaintiff. | ) | |
| | ) | |
| v. | ) | Civil Action No.: 1:15-CV-580 |
| | ) | (Lo/TCB) |
| ORIGINAL DRIFTERS, INC. | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |
| | ) | |

DEFENDANT, ORIGINAL DRIFTERS, INC.,
MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM

Defendant, ORIGINAL DRIFTERS, INC., by counsel, respectfully submits this Motion to Dismiss Plaintiff's Complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure for failure to state a claim.

The grounds for this motion are set forth more fully in the attached memorandum incorporated by reference herein.

Respectfully submitted,

Date: September 30, 2015

ORIGINAL DRIFTERS, INC.

/s/ James M. Slattery
James M. Slattery, VSB# 15424
BIRCH, STEWART, KOLASCH & BIRCH, LLP
8110 Gatehouse Road, Suite 100 East
Falls Church, VA 22040-0747
(703) 205-8000
(703) 205-8050 (facsimile)
jms@bskb.com
mailroom@bskb.com

### CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 30th day of September, 2015, the foregoing was electronically filed with the Clerk of the Court using the CM/ECF system and thereby served via the Court's ECF system to the counsel listed below:

Paula M. Potoczak
Law Office of Paula M. Potoczak
218 North Lee Street
Third Floor
Alexandria, VA  22314
pmplaw@earthlink.net


Cindy D. Salvo, Esq.
The Salvo Law Firm, P.C.
185 Fairfield Avenue, Suite 3C/3D
West Caldwell, New Jersey 07006
csalvo@salvolawfirm.com


/s/ James M. Slattery
James M. Slattery, VSB# 15424
BIRCH, STEWART, KOLASCH & BIRCH, LLP
8110 Gatehouse Road, Suite 100 East
Falls Church, VA 22040-0747
(703) 205-8000
(703) 205-8050 (facsimile)
jms@bskb.com
mailroom@bskb.com


Attorney for Defendant Original Drifters, Inc.


2


12

Jan 02 21 11:23a     Bowzer Inc                    3238512350                    p.1

> THIS DISPOSITION IS NOT
> CITABLE AS PRECEDENT
> OF THE TTAB

Mailed:   September 24, 2004
                           csl

## UNITED STATES PATENT AND TRADEMARK OFFICE

---

### Trademark Trial and Appeal Board

---

Willie B. Pinkney

v.

Treadwell's Drifters, Inc.

---

Opposition No. 91151984
against Application Serial No. 73807122,
filed June 16, 1989

---

James M. Slattery of Birch, Stewart, Kolasch & Birch, LLP for
Willie B. Pinkney.

Claude W. Roxborough of Kimmel & Roxborough, LLC for Treadwell's
Drifters, Inc.

Before Simms, Seeherman and Quinn, Administrative Trademark
Judges.

Opinion by Simms, Administrative Trademark Judge:

Willie B. Pinkney ("opposer") has opposed the

application of Treadwell's Drifters, Inc. ("applicant"), a

EXH. A

Opposition No. 91151984

New Jersey corporation, to register the mark THE DRIFTERS
for entertainment services in the nature of singing group.[1]

In his notice of opposition, Mr. Pinkney alleges that
he has previously used and is now using the mark Bill
Pinkney's Original Drifters for entertainment services in
the nature of live performances by a musical group.
Opposer asserts ownership of an application to register
that service mark (Serial No. 75469250).  As grounds for
opposition, opposer asserts that applicant's mark so
resembles opposer's previously used mark as to be likely to
cause confusion; that applicant's mark disparages and
falsely suggests a connection with opposer; that
applicant's officer falsely stated in the application that
she knew of no one who had a right to use the mark THE
DRIFTERS when in fact she knew that another had rights; and
that applicant is not the owner of the mark sought to be
registered because of opposer's prior use.

In its answer, applicant has denied the allegations of
the opposition and has asserted that a court has enjoined
the use of the mark Bill Pinkney's Original Drifters.

The record of this case consists of opposer's requests
for admission, to which applicant did not respond,

---

[1] Application Serial No. 73807122, filed June 16, 1989, claiming
use and use in commerce by a predecessor since 1953.

2

Opposition No. 91151984

introduced by opposer's notice of reliance; five
depositions (and related exhibits) taken by opposer; and
the application file.  Applicant did not take testimony,
and only opposer filed a brief.  No request for an oral
hearing was filed.

In his testimony deposition, Mr. Pinkney stated that
he began performing with THE DRIFTERS in 1953.  He
testified that since that date he has continuously
performed with THE DRIFTERS or under the name Bill Pinkney
& The Original Drifters.  Pinkney dep., 6, 18.  He also
testified concerning an arbitration hearing and ruling made
by the American Guild of Variety Artists.  In that ruling,
issued in the late 1950s, it was ruled that Mr. Pinkney
could perform under the mark The Original Drifters.  He
testified that, since the date of that ruling, he has
continuously used either The Original Drifters or Bill
Pinkney's Original Drifters.  Pinkney dep., 11.

Exhibits submitted with opposer's testimony show that
a civil action (68-CVS-2630) was brought by The Drifters,
Inc. against Mr. Pinkney.  The record contains a copy of a
barely legible order dated March 9, 1970, wherein the
Superior Court Division of North Carolina, County of
Mecklenburg, enjoined Mr. Pinkney from "using the name 'The
Drifters' or 'The Original Drifters' or using as his trade

3

Opposition No. 91151984

name any name including the name 'Drifters' and from using
Plaintiff's distinct style and harmony, and from
advertising as his own recordings Plaintiff's nationally
popular records."  According to his testimony, Mr. Pinkney
stated that as soon as he became aware of the entry of this
judgment, he moved to have it set aside.  Opposer has also
made of record a copy of an order dated October 26, 1993,
whereby the same court dissolved the "Default Judgment and
Permanent Injunction filed in this case and dated March 9,
1990 [sic, should be March 9, 1970]."  That order also
dismissed the suit brought by The Drifters, Inc.

Mr. Pinkney's testimony was corroborated by other
witnesses.  For example, Mr. Charlie Thomas testified that
he has performed with Mr. Pinkney since the early 1960s
under the name The Original Drifters.  According to Mr.
Thomas, Mr. Pinkney owns this mark.

Mr. Charles Cockerham testified that he began
performing with Mr. Pinkney in November 1969 under the
names The Original Drifters and Bill Pinkney's Original
Drifters, and that they have continuously performed under
those names across the country and overseas.  In fact, the
night before his deposition, Mr. Cockerham performed with
Mr. Pinkney under the name Bill Pinkney's Original Drifters
at the Vocal Hall of Fame.

4

16

Opposition No. 91151984

Mr. Isiah Council testified that he started performing with The Original Drifters in November 1971, and that this name and Bill Pinkney's Original Drifters have been used continuously since that time.  Mr. Council testified that Mr. Pinkney is the owner of these names.

Finally, Maxine Porter testified that she began performing with Mr. Pinkney under the name The Original Drifters in March 1988, and that, to her knowledge, Mr. Pinkney has performed under that name since 1959.

Exhibits introduced in connection with these depositions show photographs, advertisements, newspaper articles and listings of performances of Mr. Pinkney's group.  These listings are for the years 1999-2003 under the name The Original Drifters.  Some exhibits also show advertisements of the group under the name Bill Pinkney & The Original Drifters.  See Exhibits 3, 6, 7 and 9 to Mr. Cockerham's deposition.  Others show the use of The Original Drifters.  See Exhibits 11, 12, and 15-18.  Copies of performance contracts with Mr. Pinkney were also submitted.  The group is usually identified as The Original Drifters in these contracts.

In his brief, opposer argues that he has standing by virtue of his performances as a member of the well-known singing group THE DRIFTERS since 1953, and by virtue of his

Opposition No. 91151984

rights to use The Original Drifters and Bill Pinkney & The Original Drifters, which he has continuously used since that date. Also, opposer argues that this date long precedes the earliest date upon which applicant is entitled to rely in the absence of evidence--the June 16, 1989 filing date of its application. Opposer argues that his marks are substantially identical in appearance and significance to applicant's mark.

As to the other grounds, opposer argues, 10-11:

It is clear from the testimony taken by the Opposer that Treadwell's Drifters, Inc. did make false statements upon the filing of their [sic] application on June 16, 1989 in view of the fact that Ms. Treadwell knew of at least Willie B. Pinkney who had the right to use the mark, "THE DRIFTERS."

The use of the mark "THE DRIFTERS" by the Applicant will disparage and falsely suggest a connection with Opposer…

In view of the testimony taken by the Opposer, it has been established that the applicant is not the owner of the mark sought to be registered and, thus, not entitled to the registration sought in the opposed application.

Our determination of likelihood of confusion under Section 2(d) of the Act is based on an analysis of all of the probative facts in evidence that are relevant to the factors bearing on the likelihood of confusion issue. See *In re Majestic Distilling Co., Inc.,* 315 F.3d 1311, 65 USPQ2d 1201 (Fed. Cir. 2003); and *In re E.I. du Pont de*

6

18

Opposition No. 91151984

*Nemours and Co.*, 476 F.2d 1357, 177 USPQ 563 (CCPA 1973).
Two key considerations are the marks and the goods or
services. *Federated Foods, Inc. v. Fort Howard Paper Co.*,
544 F.2d 1098, 192 USPQ 24, 29 (CCPA 1976) ("The fundamental
inquiry mandated by [Section] 2(d) goes to the cumulative
effect of differences in the essential characteristics of
the goods and differences in the marks.").

Upon consideration of this record and opposer's
arguments, we agree that opposer has established by a
preponderance of the evidence both his standing and his
right to prevail under Section 2(d) of the Act.  The record
amply demonstrates that opposer has continuously used the
service marks The Original Drifters and Bill Pinkney & The
Original Drifters since long prior to applicant's filing
date, the earliest date to which applicant is entitled to
rely.  See *Levi Strauss & Co. v. R. Josephs Sportwear,
Inc.*, 28 USPQ2d 1464, 1467 (TTAB 1993).  There is also
little doubt that The Original Drifters and Bill Pinkney &
The Original Drifters are substantially similar service
marks to THE DRIFTERS, and that, if these marks were used
on the identical entertainment services in the nature of a
singing group, confusion would be likely.

Because opposer is entitled to prevail on the grounds
of priority and likelihood of confusion, we need not

7

Opposition No. 91151984

address opposer's other claims, such as disparagement and false suggestion of a connection with opposer.

Decision:  The opposition is sustained under Section 2(d) and registration to applicant is refused.

8

> **This Opinion is Not a
> Precedent of the TTAB**

Hearing: May 21, 2014                                      Mailed: March 5, 2015

UNITED STATES PATENT AND TRADEMARK OFFICE

Trademark Trial and Appeal Board

*Treadwell Original Drifters, LLC*

*v.*

*Original Drifters, Inc.*

Cancellation No. 92052155

Dickerson M. Downing and Honor Costello of Crowell & Moring LLP,
    for Treadwell Original Drifters, LLC.

James M. Slattery of Birch, Stewart, Kolasch & Birch, LLP,
    for Original Drifters, Inc.

Before Zervas, Greenbaum and Masiello,
    Administrative Trademark Judges.

Opinion by Greenbaum, Administrative Trademark Judge:

Treadwell Original Drifters, LLC ("Petitioner") has petitioned to cancel a
registration owned by Original Drifters, Inc. ("Respondent") for the mark BILL
PINKNEY'S ORIGINAL DRIFTERS (standard characters) for

Exh. C

Cancellation No. 92052155

Entertainment [s]ervices in the nature of live performances by a musical group, in International Class 41.¹

In the petition for cancellation, Petitioner alleges that Respondent's mark, when used in connection with Respondent's services, so resembles Petitioner's previously used mark THE DRIFTERS for musical performances and recordings by a singing group as to be likely to cause confusion under Section 2(d) of the Trademark Act, 15 U.S.C. § 1052(d). Pet. ¶¶ 1-2, 1 TTABVUE 4.² Petitioner also alleges that it is the owner of an application for the standard character mark THE DRIFTERS for "prerecorded records, audio tapes and compact discs featuring music and electronic music" in International Class 9 and "entertainment services namely live performances by a musical band in presentation of musical performances; music publishing services; music production services" in International Class 41,³ that the Examining Attorney cited the application underlying Respondent's registration for BILL PINKNEY'S ORIGINAL DRIFTERS as a potential bar to registration of Petitioner's application, and that the Examining Attorney suspended Petitioner's application pending disposition of Respondent's earlier-filed application. Pet. ¶¶ 21-24, 1 TTABVUE 8.

---

¹ Registration No. 3649096, issued July 7, 2009, claiming first use anywhere and use in commerce since at least 1958. Assignment of underlying application from Willie B. Pinkney to Original Drifters, Inc. dated August 1, 2007, recorded Reel 003592, Frame 0729. Willie B. Pinkney, also known as Bill Pinkney, is the predecessor-in-interest to Respondent.

² TTABVUE is the Board's electronic case file system. *See* http://ttabvue.uspto.gov.

³ Application Serial No. 77119123 filed on February 28, 2007 claiming January 1, 1953 as the date of first use and first use in commerce in both classes. Petitioner also is the owner, by assignment from The Drifters UK Ltd., of a second application to register THE DRIFTERS for goods and services similar to those identified in the '123 application.

- 2 -

Cancellation No. 92052155

Respondent, in its answer, denied the salient allegations, and asserted several putative affirmative defenses setting forth its counterpoints to Petitioner's allegations.

Petitioner and Respondent filed main briefs on the case, and Petitioner filed a reply brief. An oral hearing was held on May 21, 2014.

I.    Evidentiary Matter

In its opening brief on the case, Petitioner did not discuss any objections to evidence of Respondent, and stated that it reserves its right to raise such objections in its reply brief. Petitioner then raised several objections in its reply brief. Because Petitioner waited until its reply brief to raise objections, Petitioner waived its objections. First raising objections in a reply denies the opposing party an opportunity to respond to the objections. *See Kohler Co. v. Baldwin Hardware Corp.*, 82 USPQ2d 1100, 1104 (TTAB 2007) (objection raised at trial waived when petitioner waited until its reply brief to renew objections). We will, however, address any evidentiary objections or concerns with respect to any evidence on which we rely in our discussion of such evidence.

II.    The Record

The record includes the pleadings and, pursuant to Trademark Rule 2.122(b)(1), Respondent's registration file.

In addition, Petitioner introduced the testimony deposition of Tina Treadwell (51 TTABVUE), President of Petitioner, with exhibits (53 TTABVUE 47-346). Tina Treadwell is the daughter of George Treadwell, whose importance to this case will

- 3 -

23

be discussed below. Petitioner also filed Notices of Reliance submitting Petitioner's pleaded trademark applications (22 TTABVUE), webpages from a website operated by a licensee of Petitioner (20 TTABVUE), and excerpts and exhibits from the discovery deposition of Maxine Porter, Respondent's President (21 TTABVUE).

Respondent introduced the testimony depositions (with attached exhibits) of Maxine Porter (33 and 36-39 TTABVUE); Earthalee Pinkney Johnson, who is Bill Pinkney's daughter and Respondent's Management Assistant (34 TTABVUE); and Morgan Bobby Robinson, Jr. (35 TTABVUE), who has been involved in the recording industry as a personal manager, agent and producer since the early 1950s.

In addition, pursuant to the December 31, 2012 Board order in this proceeding (40 TTABVUE) granting Respondent's motion to use testimony from another proceeding between predecessors to the present parties (Opposition No. 91151984, captioned *Willie B. Pinkney v. Treadwell's Drifters, Inc.* (2004)), Respondent submitted the testimony (with attached exhibits) of Bill Pinkney (45 TTABVUE), Maxine Porter (42 TTABVUE), and singers Isiah Council (44 TTABVUE), Charles Cockerham (43 TTABVUE) and Charlie Thomas (41 TTABVUE).

III.    Designation of Confidential Matter

Respondent designated as confidential the entirety of Maxine Porter's Testimony Deposition Volume 5 (33 TTABVUE) and associated exhibits R-44 and R-45, although most of her testimony and many of the documents included in the exhibits are not of a genuinely confidential nature.

- *4* -

Cancellation No. 92052155

As with any confidential information in a Board proceeding, only the particular portion of the submission that discloses confidential information should be filed as confidential in ESTTA, the Board's electronic database through which filings are made. It is the policy of this tribunal that proceedings be public, and parties to Board proceedings may not subvert that policy by overly broad designations of materials submitted therein as confidential. **Respondent is ordered to submit a redacted version of Volume 5 of Maxine Porter's Testimony Deposition and exhibits in which only information that is truly confidential is deleted within thirty (30) days from the mailing date of this decision, failing which the current Volume 5 will become part of the public record in its entirety.** *See, e.g., Morgan Creek Productions Inc. v. Foria Int'l Inc.,* 91 USPQ2d 1184, 1136 n.9 (TTAB 2009).

IV.    Discussion

A.    Standing

To establish standing to petition to cancel Respondent's registration, Petitioner must prove that it has a real interest in the outcome of this proceeding and, thus, a reasonable basis for its belief that it would be damaged by the registration. *See Ritchie v. Simpson,* 170 F.3d 1092, 50 USPQ2d 1023 (Fed. Cir. 1999); *Jewelers Vigilance Committee, Inc. v. Ullenberg Corp.,* 823 F.2d 490, 2 USPQ2d 2021 (Fed. Cir. 1987); *Lipton Industries, Inc. v. Ralston Purina Co.,* 670 F.2d 1024, 213 USPQ 185 (CCPA 1982). Petitioner has made of record the USPTO Office Action suspending Petitioner's pleaded application Serial No. 77119123 pending the

- 5 -

25

Cancellation No. 92052155

possible refusal to registration under Section 2(d) based on an alleged likelihood of confusion with Respondent's earlier-filed, then-pending application (now the involved registration). Petitioner therefore has established its standing to bring this case. *Life Zone Inc. v Middleman Group, Inc.*, 87 USPQ2d 1953, 1959 (TTAB 2008) (standing found based on plaintiff's ownership of pending application and Office Action which raised defendant's application as a potential bar to registration). *See also ShutEmDown Sports, Inc. v. Lacy*, 102 USPQ2d 1036, 1041 (TTAB 2012).

B.    Grounds for Cancellation/Burden of Proof

The registration Petitioner seeks to cancel is entitled to the *prima facie* presumptions, under Section 7(b) of the Trademark Act, 15 U.S.C. § 1057(b), of the validity of the registration, Respondent's ownership of the registered mark, and Respondent's right to exclusive use of the mark in commerce in connection with the identified services. Petitioner thus must rebut these presumptions, and establish its pleaded case (priority and likelihood of confusion) by a preponderance of the evidence. *Cunningham v. Laser Golf Corp.*, 222 F.3d 943, 55 USPQ2d 1842, 1848 (Fed. Cir. 2000); *Cerveceria Centroamericana, S.A. v. Cerveceria India Inc.*, 892 F.2d 1021, 13 USPQ2d 1307, 1309 (Fed. Cir. 1989). It is only after Petitioner has established a *prima facie* case that the burden of proof shifts to Respondent. *Cold War Museum, Inc. v. Cold War Air Museum, Inc.*, 586 F.3d 1352, 92 USPQ2d 1626, 1629-1630 (Fed. Cir. 2009) ("The burden of producing additional evidence or argument in defense of registration only shifts to the registrant if and when the party seeking cancellation establishes a prima facie showing of invalidity.").

- 6 -

Cancellation No. 92052155

In order for Petitioner to prevail on a claim of likelihood of confusion, Petitioner must prove it has proprietary rights in the term it relies upon to demonstrate likelihood of confusion as to source. *Herbko Int'l Inc. v. Kappa Books*, 308 F.2d 1156, 64 USPQ2d 1375, 1378 (Fed. Cir. 2002); *Otto Roth & Co. v. Universal Foods Corp.*, 640 F.2d 1317, 209 USPQ 40, 43 (CCPA 1981). If Petitioner's claim of likelihood of confusion is based, as in this case, on ownership of an unregistered mark, the mark must be distinctive, inherently or otherwise, and Petitioner must show priority of use. *Id.* at 43. Because Respondent has not questioned the inherent distinctiveness of THE DRIFTERS, and we know of no reason on this record why THE DRIFTERS would not be inherently distinctive, we assume that it functions as a mark. *Id.* at 44.

### C.   Background

It is undisputed that in 1953 a musical ensemble that identified itself as "The Drifters" ("The Drifters" or "the Group") began to perform. It is also undisputed that the original performers included singers Clyde McPhatter, Willie B. (Bill) Pinkney, Andrew Thrasher and Gerhart Thrasher. Pinkney Prior Test. at 18, 45 TTABVUE 22; Robinson Test. at 6, 35 TTABVUE 6; T. Treadwell Test. at 5, 36, 51 TTABVUE 5, 36.

Both parties claim that they have made continuous use, through their predecessors-in-interest, of the word DRIFTERS for musical performances since

- 7 -

27

Cancellation No. 92052155

1953.[4] In addition, both parties claim that they have received and continue to receive royalties from recordings and radio air time under mark THE DRIFTERS in the United States. T. Treadwell Test. at 160-161, 51 TTABVUE 161-162; Pinkney Prior Test. at 4, 45 TTABVUE 8; Porter Test. Vol. 2 at 6-8, 37 TTABVUE 6-8; Porter Test. Vol. 4 at 13-14, 39 TTABVUE 13-14. Petitioner has taken the position that parties who receive royalties on recordings maintain a continuing interest in the trademark under which the recordings are sold even if live performances under the mark have ceased, citing as support for this principle *Marshak v. Treadwell*, 58 F.Supp.2d 551, 574 (D.N.J. 1999), *aff'd*, 240 F.3d 184 (3d Cir. 2001) ("*Marshak I*"), *Kingsmen v. K-Tel Int'l Ltd.*, 557 F.Supp. 178, 183 (S.D.N.Y. 1983), *aff'd*, 240 F.3d 184 (3d Cir. 2001), and *HEC Enters., Ltd. v. Deep Purple, Inc.*, 213 USPQ2d 991 (C.D. Cal. 1980). Pet. Br. at 30-32, 53 TTABVUE 37-39. If we accept Petitioner's position on this point, then such continuity of trademark rights, insofar as it is maintained through collection of royalties, applies equally to both parties. Petitioner is therefore not in a position to challenge Respondent's continuity of use of the mark THE DRIFTERS. Thus, the crux of this controversy is whether Petitioner can demonstrate rights in this term that are prior in time to those of Respondent.

### D. Petitioner's Theory of the Case

Petitioner's theory of the case, at least insofar as it pertains to rights Petitioner has in the mark THE DRIFTERS, is based on the activities of George Treadwell, his

---

[4] Petitioner also claims that it has made continuous use of the mark THE DRIFTERS for sound recordings since 1953. Pet. ¶¶ 1-2, 1 TTABVUE 4.

- 8 -

Cancellation No. 92052155

family, and the various companies that he and his family have controlled, starting with The Drifters, Inc., which was incorporated in 1954 in New York, and culminating in Petitioner. As Tina Treadwell testified, "the [G]roup started and ended with our family." T. Treadwell Test. at 147, 51 TTABVUE 148.

This theory is premised on several elements, all of which Respondent disputes. First, Petitioner contends that George Treadwell co-founded the Group in 1953 with Ahmet Ertegun, the President of Atlantic Records, and Clyde McPhatter, the first lead singer of the Group. Pet. Br. at 9, 53 TTABVUE 16. Second, Petitioner argues its ownership of the mark THE DRIFTERS stems from several predecessor "corporations and entities that date back to ... George Treadwell, in 1953" (Pet. Br. at 8, 53 TTABVUE 15), starting with The Drifters, Inc. Third, Petitioner asserts that all of the singers, including Bill Pinkney, were merely employees of The Drifters, Inc., or its corporate successors, which George Treadwell and his family controlled, and that none of the employees had ownership rights in the mark THE DRIFTERS. Pet. Br. at 15, 53 TTABVUE at 22. As a corollary, Petitioner claims ownership rights to the mark THE DRIFTERS through George Treadwell's position as manager of the Group starting in 1953 or 1954 — a position that he allegedly maintained until he died in 1967. According to Petitioner, in his managerial position, George Treadwell controlled all aspects of the Group, including hiring and firing performers, choosing, arranging and sometimes co-writing the songs, selecting the performers' clothing, and "maintaining the integrity of the brand." Pet. Br. at 12, 53 TTABVUE at 19.

- 9 -

29

Cancellation No. 92052155

We now review the relevant evidence and testimony concerning each of the elements of Petitioner's theory of ownership.

1. Did George Treadwell Have any Ownership Rights in the Name THE DRIFTERS When the Group was Formed in 1953?

Petitioner contends that in 1953, its predecessor-in-interest, George Treadwell, founded the Group with singer Clyde McPhatter under the sponsorship of Ahmet Ertegun, the founder of Atlantic Records. T. Treadwell Test. at 4-5 and 25-27, 51 TTABVUE 4-5 and 25-27; Pet. Br. at 9, 53 TTABVUE 16. Petitioner relies on the trial testimony of Tina Treadwell to support Petitioner's contentions as to the formation of the Group. In this regard, Tina Treadwell testified:

> The Drifters wasn't a group that started in terms of four
> guys getting together and saying we are going to be The
> Drifters. It was a corporate entity that was begun by
> Clyde and my father, they chose the employees that came
> to be, you know, that sang with him. And it was always a
> group around the lead singer. T. Treadwell Test. at 136,
> 51 TTABVUE 136.

She further testified: "Before there were any other Drifters there were my father and Clyde who started a company, and that company that was incorporated." *Id.* at 145. We note that oral testimony, even of a single witness, if sufficiently probative, may suffice to prove priority. *Powermatics, Inc. v. Glebe Roofing Prods. Co.*, 341 F.2d 127, 144 USPQ 430 (CCPA 1965); *Kohler Co. v. Baldwin Hardware Corp.*, 82 USPQ2d 1100, 1108 (TTAB 2007). *See also Nat'l Bank Book Co. v. Leather Crafted Prods., Inc.*, 218 USPQ 826, 828 (TTAB 1993) (oral testimony may be sufficient to prove the first use of a party's mark when it is based on personal knowledge, it is clear and convincing, and it has not been contradicted). However, we also bear in

- *10* -

Cancellation No. 92052155

mind that, as one who was born in 1958, Tina Treadwell has no personal knowledge of events that occurred before then.

Petitioner placed in evidence several pages from the website located at thedrifters.co.uk, submitted as Exhibit P-6 to Tina Treadwell's testimony deposition. 53 TTABVUE 58. This document states that "[s]ince 1953, more than 65 vocalists have performed as part of the group ... During this time, the only constant has been the Treadwell family, who founded this group back in 1953 and who still own the group to this day." 53 TTABVUE 63. The document further states that "The Drifters were formed in 1953 by the late George Treadwell. To this day, the group is still owned by the Treadwell Family." 53 TTABVUE 67.

Although this evidence is admissible because it meets the requirements set forth in *Safer Inc. v. OMS Investments, Inc.*, 94 USPQ2d 1031 (TTAB 2010), it is admissible only "to show what has been printed, not the truth of what has been printed." *Id.* at 1040. Moreover, we cannot logically view these web pages as corroborating or otherwise reinforcing the testimony of Tina Treadwell, because she testified that she manages and controls the content of the website through a licensee. T. Treadwell Test. at 20-21, 51 TTABVUE 21-22. While we have no doubt that Tina Treadwell believes the information on the website to be true, she testified that "most of the older history came from our family files :..," *id.*, but Petitioner

- *11* -

Cancellation No. 92052155

provided nothing from the "family files" to support her testimony about the formation of the Group.[5]

In any event, the printout from the website sets forth a narrative that is at odds with Petitioner's version of the events, at least in part. Notably, the paragraph describing Ahmet Ertegun states that "[h]e encouraged Clyde McPhatter to join Atlantic in the early 1950[]s and together they formed The Drifters." 53 TTABVUE 58. And the paragraph describing Clyde McPhatter states that "Clyde formed the Drifters in 1953 ... but in May 1954, McPhatter looked towards a solo career. He sold his half share of The Drifters to George Treadwell when he left." *Id.* Neither entry mentions George Treadwell's role in the formation of the Group.

The printout from the website therefore is of limited probative value, and Ms. Treadwell's testimony that George Treadwell formed the Group with Clyde McPhatter in 1953 is otherwise unsubstantiated. Moreover, Respondent's testimony and evidence, discussed below, directly contradict Ms. Treadwell's testimony on this point.

Respondent, for its part, contends that although Bill Pinkney took part in the formation of the Group and in its first performances in 1953, George Treadwell was not then involved. Robinson Test. at 6, 47, 35 TTABVUE 6, 47. As noted above, there is no dispute that the Group started to perform in 1953, and Bill Pinkney was

---

[5] Tina Treadwell's knowledge of the early years of the Group is based on information she has in her possession because she is President of Petitioner, and because she is the daughter of George Treadwell and Faye Treadwell, who assumed control and management of the company after George Treadwell died in 1967. However, Ms. Treadwell is too young to have personal knowledge of the 1953 events, and she presented no business records other than the printout from the corporate website, discussed above, to substantiate her claims.

- *12* -

Cancellation No. 92052155

a singer in the Group at that time. In addition, in the prior Opposition, Bill Pinkney testified that he "started with The Drifters in 1953 at the very beginning" and that since that date, he continuously has performed as "The Drifters" or as "Bill Pinkney & the Original Drifters." Pinkney Prior Test. at 4, 6, 45 TTABVUE 8, 10. In addition, Maxine Porter testified that even after Bill Pinkney's death in 2007, Respondent continues to tour and record under the name BILL PINKNEY'S ORIGINAL DRIFTERS. Porter Confid. Test. Vol. 5 at 9-12, TTABVUE 10-13.

Morgan Bobby Robinson, Jr., who is the only witness whose testimony was taken in this proceeding with first-hand knowledge of the events of 1953,[6] testified that he was "the original manager of the Thrasher Brothers," whom he "released [] in 1953 to become part of The Drifters." Robinson Test. at 6, 35 TTABVUE at 6. According to Mr. Robinson, in 1953, Bill Pinkney and the other four original singers in the Group came to the Gale Agency, where Mr. Robinson was employed, and they hired Gale Agency to act as their booking agent. Robinson Test. at 6, 35 TTABVUE 6. Mr. Robinson specifically denies that George Treadwell was involved with the Group in 1953: "I know in '53, there wasn't no Treadwell." Robinson Test. at 47, 35 TTABVUE 47.

Mr. Robinson also testified that Bill Pinkney performed with the Group from 1953-1958, that he formed "The Original Drifters" singing group with Andrew and Gerhart Thrasher in 1958, and that he performed as either "The Drifters," "The Original Drifters" or "Bill Pinkney's Original Drifter's" from 1953 until he died in

[6] Bill Pinkney also had first-hand knowledge of the events of 1953. As noted above, his testimony from the prior Opposition proceeding is of record in this case.

- 13 -

33

Cancellation No. 92052155

2007, "[b]ecause I've known Bill Pinkney from the day he started in, and became a member of, The Drifters all the way up to the day he passed away." Robinson Test. at 19, 36-38, 35 TTABVUE 19, 36-38.

We also consider certain affidavits filed in the case of *Drifters, Inc. v. Circle Artists Corp.*, 13 Misc.2d 778, 178 N.Y.S.2d 713 (1958) in the New York State Supreme Court, Special Term ("Circle Artists Litigation"), which were submitted in this proceeding by both Petitioner and Respondent. Respondent submitted the entire record of proceedings as Exhibit R-4 to the testimony deposition of Earthalee Pinkney Johnson (Johnson Test. at 6, 34 TTABVUE 6, 45-101).

In the Circle Artists Litigation, The Drifters, Inc. sought, but failed to secure, a temporary injunction restraining Circle Artists and its president from using the name THE DRIFTERS and acting as an agent for or booking performances of a musical group under the trademarks THE DRIFTERS or THE ORIGINAL DRIFTERS. Exh. R-4, 34 TTABVUE 45-101. In connection with the plaintiff's Motion for a Temporary Restraining Order, the following notarized affidavits were filed: Lewis Lebish (for plaintiff, 34 TTABVUE 53-55)[7], Frank R. Sands[8] (for defendants, 34 TTABVUE 58-61), Bill Pinkney, Andrew Thrasher and Gerhart Thrasher (jointly for defendants, 34 TTABVUE 62-67), with attached exhibits (34 TTABVUE 68-78), and the reply (second) affidavit of Lewis Lebish (34 TTABVUE

---

[7] Petitioner also submitted this affidavit as Exhibit P-49 to the testimony deposition of Tina Treadwell. 53 TTABVUE 311.

[8] Mr. Sands was the President of Circle Artists Corp. Circle Artists Corp. was a spin-off of Gale Agency, which was the booking agency for THE DRIFTERS from 1953-1958. Robinson Test. at 22-23, 35 TTABVUE 22-23.

- 14 -

Cancellation No. 92052155

80-82) with attached exhibits (34 TTABVUE 83-101). Based on Maxine Porter's testimony and the discussion between counsel as to the provenance of these documents, and the representation of Respondent's counsel at the end of Ms. Porter's testimony that Exhibit R-4 is a complete copy of the record of the Circle Artists Litigation (Porter Confid. Test. Vol. 5 at 57-62, 74-75, 33 TTABVUE 58-63, 75-76), we find that the notarized affidavits meet the authenticity requirements of Fed. R. Evid. 901(b)(8) and Fed. R. Evid. 902(8), and that they are admissible under the ancient documents exception to the hearsay rule. Fed. R. Evid. 803(16).

In the Joint Affidavit of Bill Pinkney, Andrew Thrasher and Gerhart Thrasher, the three singers testified that "[i]n 1953 your deponents, together with a Clyde McThatter [sic], formed a quintet singing group known as THE DRIFTERS" (*id.* at 62), and "[t]hat name, THE DRIFTERS, was our sole and exclusive property," (*id.* at 64); they also stated that Lewis Lebish's efforts to appropriate the mark THE DRIFTERS by creating a corporation named The Drifters, Inc., were unauthorized. *Id.* at 63-65. We note that the Joint Affidavit constituted the sworn testimony of three witnesses who, as singers in the original Group, had first-hand knowledge of the events at issue. Moreover, it makes a clear statement as to the affiants' belief as to the ownership of the name, the date as of which such ownership arose (1953), and the method whereby such ownership arose (the formation of a singing group under that name).

Lewis Lebish, who was one of the three original directors and shareholders in The Drifters, Inc., denied these statements in his reply affidavit. Pet. Exh. R-4, 34

- *15* -

35

Cancellation No. 92052155

TTABVUE 80. He also testified in his initial affidavit "[t]hat I and my associates during the past five (5) years have spent considerable money in teaching, hiring, coaching and publicizing a singing group to be known as 'THE DRIFTERS.'" *Id.* at 53. The affidavit is not specific as to the identity of Mr. Lebish's associates or as to the precise meaning of "during the past five (5) years."

After reviewing the evidence and testimony, and giving appropriate weight thereto, we find that Petitioner failed to demonstrate, by a preponderance of the evidence, that George Treadwell acquired trademark rights in the mark THE DRIFTERS through the formation of the Group in 1953. Rather, the evidence suggests that Respondent's predecessor, Bill Pinkney, and the other singers who were members of the Group in 1953, shared in trademark rights that arose when the Group began to perform in 1953. Although the form of their ownership is unclear (e.g., partnership, joint ownership, unincorporated association), it is clear that trademark rights would have arisen upon the first performance of services under the mark, under common law principles, and Petitioner has not presented any evidence or argument to persuade us otherwise.

Respondent maintains that since 1953, Bill Pinkney continued to perform under the mark THE DRIFTERS in one form or another, including as a stand-alone mark through approximately 1958. We explore in later sections of this decision Petitioner's other contentions as to how it acquired rights superior to those of Respondent and its predecessor.

- *16* -

Cancellation No. 92052155

2.   Did The Drifters, Inc. Acquire Trademark Rights to THE DRIFTERS Upon Incorporation in 1954, and if so, From Whom?

Petitioner contends that "[a]s Ms. Treadwell testified, Petitioner is the successor-in-interest, with respect to the ownership of THE DRIFTERS Mark, to a number of predecessor corporations and entities that date back to her father, George Treadwell, in 1953. The corporate entities include: (1) The Drifters, Inc., which was incorporated in the State of New York on or about November 18, 1954 …". Pet. Br. at 8, 53 TTABVUE 15.

The record shows that The Drifters, Inc. was formed on November 18, 1954 as a New York corporation with three directors, Margaret Harmon, Abraham Teller and Lewis Lebish, each of whom owned one third of the shares in the corporation. Exh. P-34, 53 TTABVUE 259. However, there is no reliable testimony or documentary evidence as to how or from whom the corporation obtained trademark rights to the name THE DRIFTERS in 1954 or later.

Petitioner's sole witness, Tina Treadwell, testified that

> Margaret Harmon, Abraham Teller and Lew Lebish are the three people who invested the initial monies into the company and therefore became the current shareholders, and my father was business partners with Lewis Lebish and together they ran the company, and my father was president of the company.

T. Treadwell Test. at 97, 51 TTABVUE 98. Tina Treadwell further testified that "[a]t the time of incorporation where there were monies put into the company [George Treadwell] had not put money into it, but he as the person who started the company with Clyde, they were [sic] president of the company and his shares came shortly after that." T. Treadwell Test. at 163, 51 TTABVUE 164. While this

- 17 -

37

Cancellation No. 92052155

testimony explains why George Treadwell was not an original director or shareholder of The Drifters, Inc., it does not explain how or from whom the corporation obtained trademark rights in the name THE DRIFTERS, and Tina Treadwell did not testify that any of the five original singers transferred their interest in the name THE DRIFTERS to the corporation. As is apparent from the discussion in the prior section, trademark rights were created in 1953, through use of THE DRIFTERS mark, which is not contested by the parties.

We note Tina Treadwell's testimony confirming the statements on the printout from thedrifters.co.uk website that "in May 1954," Clyde McPhatter left the Group and "sold his half share of The Drifters to George Treadwell." Exh. P-6, 53 TTABVUE 58-59; T. Treadwell Test. at 27, 51 TTABVUE 28. As discussed above, the evidentiary value of the information on this printout is limited. Further, her testimony regarding movement of the trademark THE DRIFTERS from Clyde McPhatter to George Treadwell is unsubstantiated. We also note that an article on the history.com website (Exh. P-7, 53 TTABVUE 83), reports that Clyde McPhatter left the Group in 1956.[9] In any event, regardless of when Clyde McPhatter left the Group, Tina Treadwell did not testify that he transferred anything to the corporation. Moreover, although Tina Treadwell testified that Clyde McPhatter and her father began the "corporate entity" behind the Group, (T. Treadwell Test. at 135, 51 TTABVUE 136), and that "the [G]roup started and ended with our family,"

---

[9] We discuss below the admissibility and probative value of this document.

- 18 -

38

(T. Treadwell Test. at 147, 51 TTABVUE 148), the 1954 incorporation is at odds with the inception of the mark in 1953.

At her deposition, Tina Treadwell was shown a copy of the history.com article, and she stated that the information contained therein is correct to the best of her knowledge. Exh. P-7, T. Treadwell Test. at 42-44, 51 TTABVUE 42-44. This article also suggests that Clyde McPhatter and George Treadwell were partners ("[w]hen McPhatter left the [G]roup, he sold his 50-percent ownership stake in the Drifters' name and song copyrights to his sole partner, the group's manager, George Treadwell."), but it does not state when that partnership was formed. And, although it also states that after Clyde McPhatter left the Group, "from that point forward, Treadwell ran the Drifters as a business in which the [G]roup's singers were paid a modest weekly salary but did not share in royalty earnings" (53 TTABVUE 83), it does not mention The Drifters, Inc. at all. Moreover, the article does not indicate the source(s) of its information.

While we can give weight to what Ms. Treadwell says about this document, we give no weight to the truth of the matters asserted in the document because it is hearsay. This raises the perplexing question as to whether the history.com article is the source of Ms. Treadwell's information, as she was born after the events described in the article occurred. In any event, we cannot consider the document for the truth of the matter asserted, and we give only limited weight to Ms. Treadwell's testimony as to events that transpired years before she was born.

- 19 -

Cancellation No. 92052155

In the Circle Artists Litigation, the corporation argued in its Motion for a Temporary Restraining Order that it "is the successor in interest to a partnership known as 'THE DRIFTERS,'" (34 TTABVUE 47) but this is merely an argument of counsel. No evidence was offered to support the argument.

The Lebish reply affidavit states that in 1954, Clyde McPhatter was doing business as "The Drifters," that McPhatter employed various singers, including Bill Pinkney and the Thrashers, as part of his group, and "[t]hat thereafter The Drifters[,] Inc. obtained title to the name 'The Drifters.'" 34 TTABVUE 80-81. Mr. Lebish does not allege that the corporation obtained title to the name from Clyde McPhatter, and he does not even mention George Treadwell. There is no testimony that any of the singers, including Clyde McPhatter, transferred his interest in THE DRIFTERS to the corporation. Moreover, this account traces the origin of "The Drifters" solely to Clyde McPhatter, and is inconsistent with Petitioner's other accounts, including the "partnership" mentioned in the Motion.

In the Joint Affidavit, the singers took the position that the incorporation was an attempt to appropriate their preexisting trademark rights, and they rejected any claim that The Drifters, Inc. owned the trademark THE DRIFTERS. In particular, they testified that they never authorized anyone, including Lewis Lebish, to "file any trade name, corporate name, partnership name, or any other name in our behalf"; that Lewis Lebish only handled tax matters for the group, and "had no right to incorporate the name 'THE DRIFTERS' on November 21 [sic 18], 1954, and thereby appropriating that name for himself and his associates. It was certainly

- 20 -

40

Cancellation No. 92052155

never done with our authorization or consent."; and that in the act of incorporating The Drifters, Inc., "Mr. Lebish took advantage of his position as accountant and as attorney to appropriate something to his own use." Exh. R-4, 34 TTABVUE 64-65.

The evidence shows that the Group was performing and recording under the name THE DRIFTERS in 1953, and the corporation was not formed until 1954. The formation of a corporation in 1954 could not create trademark rights in the name THE DRIFTERS when the Group had performed and recorded under that name in 1953, and there is no reliable evidence or testimony that anyone transferred ownership of that name to the corporation. Accordingly, we find that Petitioner has failed to demonstrate by a preponderance of the evidence that any incidents connected with the incorporation of The Drifters, Inc. resulted in ownership of the mark THE DRIFTERS by George Treadwell or any other predecessor of Petitioner.[10]

3.    Did Bill Pinkney Become an Employee of The Drifters, Inc. in 1955, and if so, did he Relinquish his Ownership of THE DRIFTERS Trademark?

Petitioner contends that "Mr. Pinkney, like the other Drifters throughout their history, was an employee working under an employment agreement for a Treadwell controlled company that provided that he did not own any rights in THE DRIFTERS Mark." Pet. Br. at 15, 53 TTABVUE 22. The parties dispute whether Bill Pinkney signed an employment agreement with The Drifters, Inc. In its

---

[10] Therefore, unless Petitioner provides sufficient evidence to carry its burden of proof as to how, and from whom, it acquired ownership of THE DRIFTERS mark, Petitioner's voluminous evidence, and Tina Treadwell's related testimony, concerning subsequent transfers of the mark THE DRIFTERS to other corporate entities, culminating in Petitioner, is not relevant.

- 21 -

Cancellation No. 92052155

Answer, Respondent denied that Bill Pinkney had done so. Ans. ¶¶ 17-19, 11
TTABVUE 6. Petitioner has submitted an agreement dated April 21, 1955 (Exh. P-
14, 58 TTABVUE 115), but Earthalee Pinkney Johnson testified that she did not
recognize the signature (which is barely legible on the copy filed with the Board) as
that of her father Bill Pinkney. Johnson Test. at 7, 34 TTABVUE 7. However, even
if Bill Pinkney signed the agreement, we do not agree with Petitioner's contention
that paragraph 6 shows that Bill Pinkney (the ARTIST) acknowledged the
"exclusive right" of The Drifters, Inc. (the EMPLOYER) in the trademark THE
DRIFTERS.[11] Paragraph 6 reads as follows:

> The EMPLOYER shall have the exclusive right in its own
> name and otherwise to use and to license others to use the
> name and/or likeness of the ARTIST in any proper way in
> connection with the advertisement and/or giving of
> publicity to performance concerning the ARTIST and for
> any commercial purpose whatsoever.

This provision, and especially the meaning of the clause "in its own name and
otherwise," is not entirely clear. Petitioner argues that this provision constitutes an
acknowledgement by the ARTIST that the EMPLOYER owns the name THE
DRIFTERS. We do not agree. When read in its entirety, the provision much more
clearly relates to the right of the EMPLOYER to use "the name and/or likeness of
the ARTIST." Notably, there is no clear reference in paragraph 6 to the name or
mark THE DRIFTERS; moreover, the document is silent as to any assignment,
transfer or license of the name THE DRIFTERS to the EMPLOYER. The document

---

[11] The Drifters, Inc. made the same argument in the Circle Artists Litigation.

Cancellation No. 92052155

is an employment agreement.[12] However, signing an employment agreement, in and of itself, does not equate to a relinquishment of pre-existing trademark rights of the employee, such as the rights that the singers in their Joint Affidavit testified belonged to them.

The provision discussed above stands in contrast to a paragraph found in subsequent employment contracts of record, signed by The Drifters, Inc. and other singers whom The Drifters, Inc. employed. That paragraph clearly states that The Drifters, Inc. owns the rights to the name THE DRIFTERS, that the Artist is merely an employee of the corporation, and that the Artist is not allowed to use the name THE DRIFTERS when not employed by the corporation. This paragraph usually appears as either paragraph 7 or 8 of such contracts dated 1960 and later (Exhs. P-8–10, 12 and 13, 53 TTABVUE 85-99, 104-114), and reads as follows:

> The Artist agrees that the name of THE DRIFTERS belongs exclusively to the Employer and that he will not at any time use the name of the DRIFTERS or any name similar thereto or any name incorporating THE DRIFTERS. In the event the employee leaves the employ of THE DRIFTERS he will not in any way advertise or attempt to publicize the fact that he has been a member of a singing group known as THE DRIFTERS and will not associate his name in any manner with the DRIFTERS; and he further acknowledges that the name THE DRIFTERS is a valuable property and any violation of this paragraph could not be adequately compensated by money damages and he, therefore, agrees that the Employer shall be entitled to an injunction in any Court

---

[12] We note, as well, various tax withholding statements (W-2 forms) that were attached to Mr. Lebish's reply affidavit in the Circle Artists Litigation, including W-2s for Bill Pinkney from 1954-1957. These documents appear to show that Bill Pinkney and other singers were employees of Clyde McPhatter in 1954, and The Drifters, Inc. in 1955-1957. However, they are not probative as to whether Bill Pinkney relinquished his rights to THE DRIFTERS mark.

- 23 -

Cancellation No. 92052155

> of competent jurisdiction to enjoin any violation or threatened violation of this agreement by the Artist.

The employment agreement that Bill Pinkney purportedly signed in 1955 did not contain this provision.

Thus, even if Bill Pinkney signed an employment agreement with The Drifters, Inc. in 1955, the evidence does not support a finding that in so doing, he relinquished ownership rights in the mark THE DRIFTERS or in any way transferred such rights to The Drifters, Inc.[18]

> 4. Did George Treadwell Acquire Rights by Virtue of Being Manager of the Group, and if so, When did Such Acquisition Occur?

The undercurrent running through this proceeding involves George Treadwell's role as the manager of the Group, and whether through that role, he acquired ownership rights to the trademark THE DRIFTERS. In this regard, Petitioner contends that when George Treadwell became the manager of the Group, "he clearly succeeded to all rights in the trademark that date back to 1953." Pet. Br. at 9, 53 TTABVUE 16. Petitioner further contends that:

---

[18] Petitioner has argued extensively about the relevance of *Marshak I* and the decisions in the subsequent contempt proceeding *Marshak v. Treadwell*, No. 95-CV-3794, slip op. (D.N.J. Sept. 7, 2007), *recon denied*, slip op. (D.N.J. Feb. 13, 2008), *aff'd in part, rev'd in part*, 595 F.3d 478, 91 USPQ2d 1289 (3d Cir. 2009) (*Marshak II*), to the issue of Bill Pinkney's rights to the mark THE DRIFTERS. Bill Pinkney was not a party to that litigation and had no opportunity to present evidence. That case was decided on different facts and evidence than the case before us, in which Bill Pinkney's successor is a party. Moreover, Petitioner acknowledges that the decisions are not binding on the Board ("Petitioner does not argue that the Marshak findings are necessarily binding on this Board. However, they are instructive ...." Pet. Reply Br. at 15, 63 TTABVUE 19). We have considered all of the decisions, but find that they do not resolve Petitioner's claim as to the rights of Bill Pinkney in this cancellation proceeding. This includes the issue of the effect of Bill Pinkney's purported employment contract, which the *Marshak II* court addressed.

- 24 -

Cancellation No. 92052155

> As the band members came and went, the one element
> that always remained the same was the control exercised
> over the [G]roup by the family of George Treadwell and
> the companies run by the Treadwells including, most
> recently, Petitioner. Mr. Treadwell was The Drifters'
> manager from 1953 until his death in 1967. After his
> death, his wife Faye Treadwell assumed that role and
> now Tina Treadwell, their daughter, is the President of
> Petitioner. It was and is the Treadwells who controlled
> The Drifters, their sound and their business dealings
> regardless of the composition of the [G]roup. It was and is
> the Treadwells who made the decisions as to who was in
> the [G]roup and who was not. It was and is the
> Treadwells and the Treadwell-controlled companies,
> including Petitioner, who have always owned THE
> DRIFTERS Mark. Pet. Br. at 15-16, 53 TTABVUE 8-9.

The July 29, 1958 Joint Affidavit signed by Bill Pinkney, Gerhart Thrasher and

Andrew Thrasher in the Circle Artists Litigation indicates that George Treadwell

was manager of the Group on May 28, 1954.[14] The other evidence of record,

discussed above, does not support a finding that he was manager at any time earlier

than 1954. However, becoming the manager of an existing enterprise does not, in

itself, effect a transfer of pre-existing trademark rights to the manager. Here, the

record does not support a finding that George Treadwell (or The Drifters, Inc.,

through George Treadwell) became the owner of the trademark THE DRIFTERS

when he became the manager of the Group in 1954, or that he "succeeded to all

rights in the trademark that date back to 1953." Indeed, the three singers attested

in their July 1958 Joint Affidavit that the trademark belonged to them from the

inception of the Group in 1953, and they do not state that George Treadwell had

---

[14] The date comes from a contract between "THE DRIFTERS" as "Artist" and Gale Agency,
which bears the signature "Willie Pinkney per G.T." on behalf of the "Artist." Exh. R-4, 34
TTABVUE 68. The affiants explain that the notation referred to George Treadwell, "our
manager at that time." Exh. R-4, 34 TTABVUE 63.

- 25 -

Cancellation No. 92052155

any rights to the name THE DRIFTERS by virtue of his role as manager of the

Group.

It is possible that, as Petitioner contends, "a manager of a group can retain trademark ownership rights in the group notwithstanding the fact that he did not perform with the group where, as here, the manager exercises control over the group and its performances." Pet Br. at 29, 53 TTABVUE 36. However, a manager who did not already own trademark rights in the group's name does not acquire those rights, and divest the original singers of any rights they may have in the group's name, merely by virtue of the manager's control over the group and its performances. Neither of the cases Petitioner cites to support the "retention" proposition speaks to this question. *See, e.g., Rick v. Buchansky*, 609 F. Supp. 1522, 1538 (S.D.N.Y. 1985); *Marshak I*, 58 F.Supp.2d 551 (Exh. P-23, 53 TTABVUE 122).

The record does not clearly show to what extent George Treadwell, as manager of the Group, exercised any control over Bill Pinkney or the Thrashers. However, particularly in light of the statements in the 1958 Joint Affidavit that the singers owned the trademark THE DRIFTERS since 1953, whatever control George Treadwell exercised over the Group after 1953 does not equate to an appropriation of Bill Pinkney's prior ownership rights to THE DRIFTERS mark. Moreover, even if Petitioner were correct in its contention that singers who leave a group do "not take with [them] any ownership rights in the group name," Pet. Br. at 30, 58 TTABVUE 87, that would not be so in the case of an individual, such as Bill Pinkney, who owned rights prior to his employment and who did not transfer them.

- 26 -

46

Cancellation No. 92052155

### 5.   AGVA Arbitration

We note the prior testimony from Bill Pinkney and Charlie Thomas relating to an arbitration hearing and ruling made by AGVA (the American Guild of Variety Artists) in the late 1950s or early 1960s. Pinkney Prior Test. at 10, 45 TTABVUE 14; Thomas Prior Test. at 3-5, 41 TTABVUE 7-9. Petitioner disputes that such arbitration occurred. Pet. Reply Br. at 22, 63 TTABVUE 22. Inasmuch as Petitioner does not contend that the arbitration was the source of its trademark rights, we do not give it further consideration.

## V.   Conclusion

As discussed above, Petitioner has the burden of proving by a preponderance of the evidence that Petitioner has prior proprietary rights in the term it relies upon, i.e., THE DRIFTERS, to demonstrate likelihood of confusion as to source. *Herbko*, 64 USPQ2d at 1378. The record does not support Petitioner's contention that Petitioner, through a series of predecessors in interest originating with George Treadwell in 1953 and The Drifters, Inc. in 1954, acquired rights in THE DRIFTERS mark that date back to the origins of the Group in 1953, whether by virtue of any involvement of Petitioner or its predecessor in the original formation of the singing group, by virtue of any incidents related to the formation of The Drifters, Inc., by virtue of employment relationships with singers, or by virtue of Mr. Treadwell's role as manager of the Group. In this case, Petitioner did not present sufficient evidence or testimony to establish that George Treadwell had trademark rights in THE DRIFTERS prior to Respondent's predecessor in interest.

- 27 -

Cancellation No. 92052155

Respondent, through its predecessor Bill Pinkney, began to use THE DRIFTERS mark in 1958, thereby acquiring rights in the mark, and Bill Pinkney and Respondent have maintained those rights. On this record, Petitioner has failed to demonstrate, by a preponderance of the evidence, ownership rights in the mark THE DRIFTERS that are prior to those of Respondent's predecessor-in-interest, Bill Pinkney. Therefore, Petitioner has not proven its priority. Because Petitioner has not established its priority, we need not reach its claim of likelihood of confusion. *See Life Zone*, 87 USPQ2d at 1960.

Decision: The petition for cancellation is dismissed.

Respondent is allowed thirty (30) days from the mailing date of this decision to submit a redacted version of Volume 5 of Maxine Porter's Testimony Deposition and exhibits (33 TTABVUE) in which only information that is truly confidential is deleted within thirty (30) days from the mailing date of this decision, failing which the current Volume 5 will become part of the public record in its entirety.

- 28 -

# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA
## ALEXANDRIA DIVISION

| | |
|---|---|
| TREADWELL ORIGINAL <br>    DRIFTERS, LLC, <br><br> v. <br><br> <u>ORIGINAL DRIFTERS, INC.</u> | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)    **1:15-cv-580 LO/TCB** |

## DECLARATION OF CINDY D. SALVO, ESQ. IN OPPOSITION TO <u>DEFENDANT'S MOTION TO DISMISS</u>

I, Cindy D. Salvo, pursuant to 28 U.S.C. § 1746, being of full age, hereby declare as follows:

1.     I am a partner with The Salvo Law Firm, P.C., and am fully familiar with the records and history of this matter. I make this Declaration in opposition to Defendant's motion to dismiss.

2.     Attached hereto as Exhibit A is a true and correct copy of an e-mail, dated May 7, 2015 at 9:38 am, from Cindy D. Salvo, Esq. to James Slattery, Esq.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on November 15, 2015

_____/s/_____<br>
CINDY D. SALVO

# EXHIBIT A

Print | Close Window

Subject: RE: Waiver of Service of Process Our Ref. 3306-0111L
   From: "Cindy Salvo" <csalvo@salvolawfirm.com>
   Date: Thu, May 07, 2015 9:38 am
     To: "Slattery, James M." <JMS@bskb.com>, "Johnson, Tiffany" <Tiffany.Johnson@bskb.com>

Jim, I am not prepared, at this time, to discuss all new evidence with you, but we can do that down the road a bit. I would also be interested in discussing a possible settlement with Maxine Porter which could be lucrative for her. Can I speak with her directly or would you like me to *speak* with you about this?

Just a reminder - if you or your client does not agree to sign the waiver of service, she will be responsible for the costs of service.

Thanks.

Cindy

Cindy D. Salvo, Esq.

THE SALVO LAW FIRM, P.C.

*www.SalvoLawFirm.com*
*www.SalvoLawEmployment.com*
*www.SalvoLawDivorce.com*
*www.FDCPADefenseFirm.com*

185 Fairfield Avenue, Suite 3C/3D
West Caldwell, New Jersey 07006
(973) 226-2220
(973) 900-8800 (fax)

303 South Broadway, Suite 486
Tarrytown, New York  10591
(973) 226-2220
(973) 900-8800 (fax)

A Woman-Owned Law Firm (Certified by WBENC)

51

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

|  |  |  |
|---|---|---|
| TREADWELL ORIGINAL DRIFTERS, LLC, | ) | |
| *Plaintiff,* | ) | |
| v. | ) | Civil Action No. 1:15-cv-580 |
| ORIGINAL DRIFTERS, INC., | ) | |
| *Defendant.* | ) | |

## ORDER

This matter comes before the Court on Defendant Original Drifters, Inc.'s Motion to Dismiss. Dkt. No. 17. Defendant argues that the doctrine of issue preclusion requires this Court to dismiss the Complaint. As outlined below, the Court finds good cause to order additional briefing on the question of issue preclusion.

### I. The Applicable Law

The doctrine of issue preclusion is "straightforward: Once a court has decided an issue, it is 'forever settle between the parties.'" *B&B Hardware, Inc. v. Hargis Indus.*, 135 S.Ct. 1293, 1302 (2015) (quoting *Baldwin v. Iowa State Traveling Men's Assn.*, 283 U.S. 522, 525 (1931)). The general rule of issue preclusion provides that "[w]hen an issue of fact or law is actually litigated and determined by a valid and final judgment, and the determination is essential to the judgment, the determination is conclusive in a subsequent action between the parties, whether on the same or a different claim." *Id.* at 1303 (citing Restatement (Second) of Judgments § 27, p. 250 (1980)). This general rule does not apply when appellate review is available. Restatement (Second) of Judgments § 28, p. 273. The Fourth Circuit has laid out the elements of issue

1

preclusion, or collateral estoppel, as follows: "(1) the issue or fact is identical to the one previously litigated; (2) the issue or fact was actually resolved in the prior proceeding; (3) the issue or fact was critical and necessary to the judgment in the prior proceeding; (4) the judgment in the prior proceeding is final and valid; and (5) the party to be foreclosed by the prior resolution of the issue or fact had a full and fair opportunity to litigate the issue or fact in the prior proceeding." *In re Microsoft Corp. Antitrust Litig.*, 355 F.3d 322, 326 (4th Cir. 2004). Issue preclusion works to bind not only a party who had a "full and fair opportunity to litigate the issue," but also a third-party who is in privity with the party that fully litigated the issue in the previous action. *Londono-Rivera v. Virginia*, 155 F.Supp.2d 551, 565 (E.D. Va. 2001); *see also Montana v. United States*, 440 U.S. 147, 153 (1979) ("[Under the doctrine of res judicata,] a final judgment on the merits bars further claims by parties or their privies based on the same cause of action.").

"To be in privity with a party to a former litigation, the non-party must be so identified in interest with a party to former litigation that he represents precisely the same legal right in respect to the subject matter involved." *Martin v. Am. Bancorporation Ret. Plan*, 407 F.3d 643, 651 (4th Cir. 2005). The Fourth Circuit recognizes three "categories of non-parties who will be considered in privity with a party to the prior action and who will therefore be bound by a prior adjudication: (1) a non-party who controls the original action; (2) a successor-in-interest to a prior party; and (3) a non-party whose interests were adequately represented by a party to the original action." *Id.*

### II. The Current Action

Plaintiff Treadwell Original Drifters, Inc.'s Complaint calls on this Court to determine just one issue: whether Plaintiff has demonstrated ownership rights in the mark THE DRIFTERS

2

that are prior to those of Defendant's predecessor-in-interest, Bill Pinkney.  The Trademark Trial and Appeals Board ("TTAB") determined in its ruling on Cancellation 92052155 that Defendant Original Drifters, "through its predecessor Bill Pinkney, began to use THE DRIFTERS mark in 1953, thereby acquiring rights in the mark," and that Plaintiff "has failed to demonstrate, by a preponderance of the evidence ownership rights in the mark THE DRIFTERS that are prior to those of Respondent's predecessor in interest Bill Pinkney."  2015 WL 1276593.  Plaintiff appeals this determination.

There are four prior rulings that Defendant insists require this Court to dismiss the current action under the doctrine of issue preclusion: (1) the TTAB's 2015 decision to dismiss Plaintiff's cancellation petition; (2) the TTAB's 2004 decision to sustain Bill Pinkney's opposition to Treadwell's Drifters' application to register the mark THE DRIFTERS; (3) the TTAB's May 28, 2009 decision to deny the opposition to Bill Pinkney's pending application to register BILL PINKNEY'S ORIGINAL DRIFTERS; and (4) the Supreme Court of New York's 1958 decision in *The Drifters, Inc. v. Circle Artists Corp.*, 178 N.Y.S.2d 713 (N.Y. Sup. Ct. 1958).  However, Defendant has not clearly explained why, under the applicable law, each of these decisions precludes the Court from considering the current action.  Plaintiff, consequently, has not fully responded to this argument.

The Court, therefore, ORDERS the parties to submit additional briefing on the question of issue preclusion.  The briefs should separately explain why or why not each of the above four rulings precludes this Court from considering the current action.  The Defendant shall submit a brief within fourteen (14) days after the issuance of this order.  The Plaintiff shall file a responsive brief within eleven (11) days after service.  The Defendant may file a rebuttal brief within three (3) days after the service of the Plaintiff's rebuttal brief.  The Defendant shall be

3

54

Case 1:15-cv-00580-LO-TCB    Document 15    Filed 12/16/15    Page 4 of 4 PageID# 175

responsible for setting a new motion hearing. After conferring with Plaintiff, the Defendant shall file a "Notice of Hearing" setting the motion for a Friday at 10:00 a.m. during the month of January 2016. SO ORDERED.

December 16, 2016
Alexandria, VA

/s/
Liam O'Grady
United States District Judge

4

55

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
ALEXANDRIA DIVISION

| | |
|---|---|
| TREADWELL'S ORIGINAL<br>DRIFTERS, LLC,<br><br>c/o Tina Treadwell<br>1327 W. Valleyheart Drive<br>Burbank, California 91506<br><br>             Plaintiff,<br><br>v.<br><br>ORIGINAL DRIFTERS, INC.<br><br>Serve:  Ida Maxine Porter<br>        Registered Agent<br>        Original Drifters, Inc.<br>        9016 Marble Drive<br>        Las Vegas, Nevada<br><br>             Defendant. | 1:15-cv-580 LO/TCB |

**DECLARATION OF CINDY D. SALVO, ESQ. IN FURTHER OPPOSITION TO
DEFENDANT'S MOTION TO DISMISS**

I, Cindy D. Salvo, pursuant to 28 U.S.C. § 1746, being of full age, hereby declare
as follows:

1.      I am an attorney, and a partner in The Salvo Law Firm, P.C.  I am *pro hac
vice* counsel in this matter, representing Plaintiff.  I am fully familiar with the records and
history of this matter.  I make this Declaration in further opposition to Defendant's
Motion to Dismiss.

56

2.    Attached hereto as Exhibit A is a true and correct copy of a page taken from "The Drifters' Box," -- a box set put out by Atlantic Records which includes every song recorded by The Drifters, as well as a booklet of information.

3.    Attached hereto as Exhibit B is a true and correct copy of three pages taken from the booklet distributed with The Drifters' Box.

4.    Attached hereto as Exhibit C is a true and correct copy of deposition testimony given by former Drifter, Charlie Thomas.

5.    Attached hereto as Exhibit D is a true and correct copy of deposition testimony given by Bill Pinkney in connection with TTAB proceeding, *Singer Management Consultants, Inc. v. Original Drifters, Inc.* (Opp. No. 91168326).

6.    Attached hereto as Exhibit E is a true and correct copy of an Opinion of the Board on Professional Responsibility of the District of Columbia Court of Appeals with respect to attorney Claude W. Roxborough.

7.    Attached hereto as Exhibit F is a true and correct copy of a page of the brief submitted by James Slattery, on behalf of Pinkney, in connection with TTAB proceeding, *Willie B. Pinkney v. Treadwell's Drifters, Inc,* (Opp. No. 91151984).

8.    Attached hereto as Exhibit G is a true and correct copy of the Decision on Pinkney's motion to dismiss, issued by the TTAB in *Singer Management Consultants, Inc. v. Original Drifters, Inc.* (Opp. No. 91168326).  It notes that the motion is being granted "as conceded."

I declare under penalty of perjury that the foregoing is true and correct.

Executed on January 15, 2016

_____/s/_____
CINDY D. SALVO

2

57

# EXHIBIT A



Letters in parentheses following recording information denote The Drifters personnel for that selection. A corresponding list appears below.





*The Drifters:*



(A) Clyde McPhatter *lead vocal*
David Baughan *tenor vocal*
William "Chick" Anderson *tenor vocal*
David Baldwin *baritone vocal*
James Johnson *bass vocal*

(B) Clyde McPhatter *lead vocal*
Andrew Thrasher *tenor vocal*
Bill Pinkney *tenor vocal*
Gerhart Thrasher *baritone vocal*
Willie Peebles *bass vocal*
Walter Adams *guitar*

(C) Clyde McPhatter *lead vocal*
Gerhart Thrasher *tenor vocal*
Andrew Thrasher *baritone vocal*
Bill Pinkney *bass vocal, lead vocal on "White Christmas"*
Jimmy Oliver *guitar*



(D) Johnny Moore *tenor vocal, lead vocal on "Adorable" & "Ruby Baby"*
Gerhart Thrasher *tenor vocal, lead vocal on "Your Promise To Be Mine" & "Drifting Away From You"*
Andrew Thrasher *baritone vocal*
Bill Pinkney *bass vocal, lead vocal on "Steamboat"*
Jimmy Oliver *guitar*

(E) Johnny Moore *lead vocal*
Gerhart Thrasher *tenor vocal*
Charlie Hughes *baritone vocal*
Tommy Evans *bass vocal*
Jimmy Oliver *guitar*



(F) Bobby Hendricks *lead vocal*
Gerhart Thrasher *tenor vocal*
Jimmy Milner *baritone vocal*
Tommy Evans *bass vocal*



(G) Ben E. King *lead vocal*
Charlie Thomas *tenor vocal, lead vocal on "Baltimore"*
Dock Green *baritone vocal*
Elsbeary Hobbs *bass vocal, lead vocal on "Baltimore"*
Reggie Kimber *guitar*

(H) Ben E. King *lead vocal*
Johnny Williams *tenor vocal, lead vocal on "(If You Cry) True Love, True Love"*
Charlie Thomas *tenor vocal*
Dock Green *baritone vocal*
Elsbeary Hobbs *bass vocal*
Billy Davis (Abdul Samad): *guitar*



(I) Rudy Lewis *lead vocal*
Charlie Thomas *tenor vocal, lead vocal on "Room Full Of Tears," "Sweets For My Sweet" & "When My Little Girl Is Smiling"*
Dock Green *baritone vocal*
Tommy Evans *bass vocal*
Billy Davis (Abdul Samad): *guitar*

(J) Rudy Lewis *lead vocal*
Charlie Thomas *tenor vocal*
Eugene Pearson *baritone vocal*
Tommy Evans *bass vocal*
Billy Davis (Abdul Samad): *guitar*



(K) Rudy Lewis *lead vocal*
Johnny Moore *lead vocal on "I'll Take You Home" & "If You Don't Come Back"*
Charlie Thomas: *tenor vocal*
Eugene Pearson *baritone vocal*
Johnny Terry *bass vocal*
Billy Davis (Abdul Samad): *guitar*



(L) Rudy Lewis *lead vocal*
Johnny Moore *lead vocal*
Charlie Thomas *tenor vocal*
Eugene Pearson *baritone vocal*
Johnny Terry *bass vocal*
Billy Davis (Abdul Samad): *guitar*



(M) Johnny Moore *lead vocal*
Charlie Thomas *tenor vocal, lead vocal on "I Don't Want To Go On Without You" & "On Broadway" (Live)*
Eugene Pearson *baritone vocal*
Johnny Terry *bass vocal*
Billy Davis (Abdul Samad): *guitar*

(N) Johnny Moore *lead vocal*
Butch Leake *tenor vocal*
Grant Kitchings *baritone vocal*
Bill Fredericks *vocal*
Butch Mann *vocal*



(O) Johnny Moore *lead vocal*
Butch Leake *tenor vocal*
Billy Lewis *baritone vocal*
Clyde Brown *vocal*
Butch Mann *vocal*

(P) Johnny Moore *lead vocal*
Joe Blunt *tenor vocal*
Billy Lewis *baritone vocal*
Clyde Brown *vocal*
Butch Mann *vocal*

(W) Doris Troy, Dee Dee Warwick & Dionne Warwick *backing vocals*

60

# EXHIBIT B

## Disc *One*

1. **LET THE BOOGIE WOOGIE ROLL** · *Clyde McPhatter*
(Ertegun/Wexler)
Produced By Ahmet Ertegun & Jerry Wexler
Recorded at Atlantic Recording Studio, NYC, 6/19/53 (B)
Atlantic single #2060, 5/60
(NOTE: This song was recorded by The Drifters in their second Atlantic recording session, but released as a Clyde McPhatter single after he left the group.)

2. **MONEY HONEY** · *Clyde McPhatter & The Drifters*
(Stone)
Produced By Ahmet Ertegun & Jerry Wexler
Recorded at Atlantic Recording Studio, NYC, 8/9/53 (B)
Atlantic single #1006, 9/53 (R&B #1)

3. **LUCILLE** · *Clyde McPhatter & The Drifters*
(McPhatter)
Produced By Ahmet Ertegun & Jerry Wexler
Recorded in NYC, 6/29/53 (A)
Atlantic single #1019, 1/54 (R&B #1)

4. **THE WAY I FEEL** · *Clyde McPhatter & The Drifters*
(Parker)
Produced By Ahmet Ertegun & Jerry Wexler
Recorded at Atlantic Recording Studio, NYC, 8/9/53 (B)
Atlantic single #1006, 9/53

5. **SUCH A NIGHT** · *Clyde McPhatter & The Drifters*
(Chase)
Produced By Ahmet Ertegun & Jerry Wexler
Recorded in NYC, 11/12/53 (C)
Atlantic single #1019, 1/54 (R&B #1)

6. **GONE** · *Clyde McPhatter & The Drifters*
(Hardy)
Produced By Ahmet Ertegun & Jerry Wexler
Recorded at Atlantic Recording Studio, NYC, 8/9/53 (B)
Atlantic single #1035, 2/55

7. **DON'T DOG ME** · *Clyde McPhatter*
(Ertegun/Wexler)
Produced By Ahmet Ertegun & Jerry Wexler
Recorded in NYC, 11/12/53 (C)
Atlantic single #2060, 5/60
(NOTE: This song was recorded by The Drifters in their third Atlantic recording session, but released as a Clyde McPhatter single after he left the group.)

8. **DIP BAM** · *The Drifters featuring Clyde McPhatter*
(Calhoun)
Produced By Ahmet Ertegun & Jerry Wexler
Recorded in NYC, 11/12/53 (C)
Atlantic single #1043, 10/54 (R&B #7)

9. **THE BELLS OF ST. MARY'S** · *The Drifters featuring Clyde McPhatter*
(Furber/Adams)
Produced By Ahmet Ertegun & Jerry Wexler
Recorded at Fulton Recording Studio, NYC, 3/4/54 (C)
Atlantic single #1048, 11/54

10. **WHITE CHRISTMAS** · *The Drifters featuring Clyde McPhatter & Bill Pinkney*
(Berlin)
Produced By Ahmet Ertegun & Jerry Wexler
Recorded at Fulton Recording Studio, NYC, 2/4/54 (C)
Atlantic single #1048, 11/54 (R&B #2, Pop #80)

11. **HONEY LOVE** · *The Drifters featuring Clyde McPhatter*
(McPhatter/Gerald)
Produced By Ahmet Ertegun & Jerry Wexler
Recorded at Fulton Recording Studio, NYC, 2/4/54 (C)
Atlantic single #1023, 5/54 (R&B #1)

12. **WHAT'CHA GONNA DO** · *Clyde McPhatter & The Drifters*
(Nugetre)
Produced By Ahmet Ertegun & Jerry Wexler
Recorded at Fulton Recording Studio, NYC, 2/4/54 (C)
Atlantic single #1055, 3/55 (R&B #2)

13. **SOMEDAY YOU'LL WANT ME TO WANT YOU** · *The Drifters featuring Clyde McPhatter*
(Hodges)
Produced By Ahmet Ertegun & Jerry Wexler
Recorded in NYC, 2/4/54 (C)
Atlantic single #1043, 10/54

14. **THREE THIRTY THREE** · *Clyde McPhatter*
(McPhatter)
Produced By Ahmet Ertegun & Jerry Wexler
Recorded at Atlantic Recording Studio, NYC, 10/24/54 (C)
From the album *The Greatest Recordings-The Early Years*, Atco
#33-375, 11/71

15. **ADORABLE** · *Clyde McPhatter*
(Rene)
Produced By Nesuhi Ertegun
Recorded at Master Recorders, L.A., 9/19/55 (D)
Atlantic single #1078, 10/55 (R&B #1)

16. **YOUR PROMISE TO BE MINE** · *Clyde McPhatter*
(Oliver)
Produced By Nesuhi Ertegun
Recorded at Master Recorders, L.A., 9/19/55 (D)
Atlantic single #1082, 3/56

17. **RUBY BABY** · *Clyde McPhatter*
(Leiber/Stoller)
Produced By Nesuhi Ertegun
Recorded at Master Recorders, L.A., 9/19/55 (D)
Atlantic single #1089, 5/56 (R&B #10)

18. **STEAMBOAT** · *Clyde McPhatter*
(Lucas)
Produced By Nesuhi Ertegun
Recorded at Master Recorders, L.A., 9/19/55 (D)
Atlantic single #1078, 10/55 (R&B #3)

19. **DRIFTING AWAY FROM YOU** · *Clyde McPhatter*
(Oliver)
Produced By Nesuhi Ertegun
Recorded at Master Recorders, L.A., 9/19/55 (D)
Atlantic single #1082, 3/56

20. **TREASURE OF LOVE** · *Clyde McPhatter*
(Stallman/Shapiro)
Produced By Ahmet Ertegun & Jerry Wexler
Recorded in NYC, 3/4/56
Atlantic single #1092, 5/56 (R&B #1, Pop #16)

21. **WITHOUT LOVE (THERE IS NOTHING)** · *Clyde McPhatter*
(Small)
Produced By Ahmet Ertegun & Jerry Wexler
Recorded in NYC, 3/4/56
Atlantic single #1117, 11/56 (R&B #4, Pop #19)

22. **FOOLS FALL IN LOVE** · *Clyde McPhatter*
(Leiber/Stoller)
Produced By Ahmet Ertegun & Jerry Wexler
Recorded at Belmont Studios, NYC, 11/6/56 (E)
Atlantic single #1123, 1/57 (R&B #10, Pop #69)

23. **LONG LONELY NIGHTS** · *Clyde McPhatter*
(Hardin/Uniman/Andrews/Henderson)
Orchestra & Chorus Directed By Reid Johnson
Produced By Ahmet Ertegun & Jerry Wexler
Recorded in NYC, 6/10/57
Atlantic single #1149, 7/57 (R&B #1, Pop #49)

24. **DRIP DROP** · *Clyde McPhatter*
(Leiber/Stoller)
A Leiber-Stoller Production
Recorded at Atlantic Recording Studio, NYC, 4/23/58 (F)
Atlantic single #1187, 5/58 (Pop #58)

25. **A LOVER'S QUESTION** · *Clyde McPhatter*
(Benton/Williams)
Produced By Ahmet Ertegun & Jerry Wexler
Recorded in NYC, 8/7/58
Atlantic single #1199, 9/58 (R&B #1, Pop #6)

26. **BALTIMORE** · *Clyde McPhatter*
(Leiber/Palmer/Colman)
Arranged & Conducted By Stan Applebaum
An LPI Production
Recorded at Central Studios, NYC, 3/6/59 (G)
Atlantic single #2050, 2/60

## Disc *Two*

1. **THERE GOES (MY BABY)** · *The Drifters*
(Nelson/Patterson)
Arranged & Conducted By Leiber-Stoller
Recorded at Coastal Recording, 3/6/59

2. **ON MY LOVE** · *Clyde McPhatter*
(Patterson/McNeil)
A Leiber-Stoller [...]
Recorded at Central [...]
Atlantic single #2[...]

3. **(IF YOU CRY) TRUE LOVE, TRUE LOVE** · *The Drifters*
(Ertegun/Nugetre)
With Orchestra Conducted By Leiber-Stoller
Recorded in NYC
Atlantic single #2[...]

4. **DANCE WITH ME** · *The Drifters*
(Lebish/Treadwell)
With Orchestra Conducted By Leiber-Stoller
Recorded in NYC
Atlantic single #2[...]

5. **THIS MAGIC MOMENT** · *The Drifters*
(Pomus/Shuman)
Arranged & Conducted By Leiber-Stoller
An LPI Production
Recorded in NYC
Atlantic single #2[...]

6. **LONELY WINDS** · *The Drifters*
(Pomus/Shuman)
Orchestra Arranged & Conducted By Leiber-Stoller
Recorded in NYC
Atlantic single #2[...]

7. **SAVE THE LAST DANCE FOR ME** · *The Drifters*
(Pomus/Shuman)
Vocal Quartet & Orchestra Arranged & Conducted By Leiber-Stoller
Recorded in NYC
Atlantic single #2[...]

8. **NOBODY BUT ME** · *The Drifters*
(Pomus/Shuman)
Vocal Quartet & Orchestra Arranged & Conducted By Leiber-Stoller
Recorded in NYC
Atlantic single #2[...]

9. **I COUNT THE TEARS** · *The Drifters*
(Pomus/Shuman)
Arranged & Conducted By Leiber-Stoller
Recorded in NYC
Atlantic single #2[...]

10. **SOMETIMES I WONDER** · *The Drifters*
(Pomus/Shuman)
Arranged & Conducted By Leiber-Stoller
Recorded in NYC
Atlantic single #2[...]

11. **SPANISH HARLEM** · *Ben E. King*
(Spector/Leiber)
Arranged & Conducted By Leiber-Stoller
Recorded in NYC
Atlantic single #2[...]

12. **YOUNG BOY BLUES** · *Ben E. King*
(Spector)
Arranged & Conducted By Leiber-Stoller
Recorded in NYC
Atlantic single #2[...]

13. **STAND BY ME** · *Ben E. King*
(King/Glick/Spector)
Arranged & Conducted By Leiber-Stoller
Recorded in NYC
Atlantic single #2[...]

## Disc *Two*

1. **THERE GOES MY BABY**
   *(Nelson/Patterson/Treadwell)*
   Arranged & Conducted By Stan Applebaum
   A Leiber-Stoller Production
   Recorded at Coastal Studio, NYC, 3/6/59 (G)
   Atlantic single #2025, 5/59 (R&B #1, Pop #2)

2. **OH MY LOVE**
   *(Patterson/Lebish)*
   A Leiber-Stoller Production
   Recorded at Coastal Studio, NYC, 3/6/59 (G)
   Atlantic single #2025, 5/59

3. **IF YOU CRY) TRUE LOVE, TRUE LOVE**
   *(Pomus/Shuman)*
   With Orchestra Conducted By Richard Wess
   A Leiber-Stoller Production
   Recorded in NYC, 7/9/59 (H)
   Atlantic single #2040, 10/59 (R&B #5, Pop #33)

4. **DANCE WITH ME**
   *(Lebish/Leiber/Stoller/Nahan/Treadwell)*
   With Orchestra Conducted By Richard Wess
   A Leiber-Stoller Production
   Recorded in NYC, 7/9/59 (H)
   Atlantic single #2040, 10/59 (R&B #2, Pop #15)

5. **THIS MAGIC MOMENT**
   *(Pomus/Shuman)*
   Arranged & Conducted By Stan Applebaum
   An LP.I Production
   Recorded in NYC, 12/23/59 (H)
   Atlantic single #2050, 3/60 (R&B #4, Pop #16)

6. **LONELY WINDS**
   *(Pomus/Shuman)*
   Orchestra Arranged & Conducted By Stan Applebaum
   A Leiber-Stoller Production
   Recorded in NYC, 12/23/59 (H)
   Atlantic single #2062, 5/60 (R&B #9, Pop #54)

7. **SAVE THE LAST DANCE FOR ME**
   *(Pomus/Shuman)*
   Vocal Quartet & Ben E. King
   Arranged & Conducted By Stan Applebaum
   A Leiber-Stoller Production
   Recorded in NYC, 5/19/60 (H)
   Atlantic single #2071, 8/60 (R&B #1, Pop #1)

8. **NOBODY BUT ME**
   *(Pomus/Shuman)*
   Vocal Quartet & Ben E. King
   Arranged & Conducted By Stan Applebaum
   A Leiber-Stoller Production
   Recorded in NYC, 5/19/60 (H)
   Atlantic single #2071, 8/60

9. **I COUNT THE TEARS**
   *(Pomus/Shuman)*
   Arranged & Conducted By Stan Applebaum
   A Leiber-Stoller Production
   Recorded in NYC, 5/19/60 (H)
   Atlantic single #2087, 12/60 (R&B #6, Pop #17)

10. **SOMETIMES I WONDER**
    *(King/Newman)*
    Arranged & Conducted By Stan Applebaum
    A Leiber-Stoller Production
    Recorded in NYC, 5/19/60 (H)
    Atlantic single #2151, 6/62

11. **SPANISH HARLEM** • *Ben E. King*
    *(Leiber/Spector)*
    Arranged & Conducted By Stan Applebaum
    Produced by Leiber & Stoller
    Recorded in NYC, 10/27/60
    Atco single #6185, 12/60 (R&B #15, Pop #10)

12. **YOUNG BOY BLUES** • *Ben E. King*
    *(Spector/Shuman)*
    Arranged & Conducted By Stan Applebaum
    A Leiber-Stoller Production
    Recorded in NYC, 10/27/60
    Atco single #6207, 9/61 (Pop #66)

13. **STAND BY ME** • *Ben E. King*
    *(King/Leiber/Stoller)*
    Arranged & Conducted By Stan Applebaum
    A Leiber-Stoller Production
    Recorded in NYC, 10/27/60
    Atco single #6194, 4/61 (R&B #1, Pop #4)

14. **ROOM FULL OF TEARS**
    *(Pomus/Shuman)*
    Arranged & Conducted By Stan Applebaum
    A Leiber-Stoller Production
    Recorded in NYC, 2/1/61 (I)
    Atlantic single #2117, 12/61 (Pop #72)

15. **PLEASE STAY**
    *(Bacharach/Williams)*
    Arranged & Conducted By Ray Ellis
    A Leiber-Stoller Production
    Recorded in NYC, 2/1/61 (I)
    Atlantic single #2105, 5/61 (R&B #13, Pop #14)

16. **SWEETS FOR MY SWEET**
    *(Pomus/Shuman)*
    Arranged & Conducted By Stan Applebaum
    A Leiber-Stoller Production
    Recorded in NYC, 2/1/61 (I)
    Atlantic single #2117, 9/61 (R&B #10, Pop #16)

17. **SOME KIND OF WONDERFUL**
    *(King/Goffin)*
    Arranged & Conducted By Ray Ellis
    A Leiber-Stoller Production
    Recorded in NYC, 2/1/61 (I)
    Atlantic single #2096, 3/61 (R&B #6, Pop #32)

18. **LONELINESS OR HAPPINESS**
    *(Bacharach/David)*
    Arranged & Conducted By Stan Applebaum
    A Leiber-Stoller Production
    Recorded in NYC, 7/13/61 (Live)
    Atlantic single #2117, 9/61

19. **MEXICAN DIVORCE**
    *(Bacharach/Hilliard)*
    Arranged & Conducted By Claus Ogerman
    A Leiber-Stoller Production
    Recorded in NYC, 7/13/61 (Live)
    Atlantic single #2134, 2/62

20. **WHEN MY LITTLE GIRL IS SMILING**
    *(King/Goffin)*
    Arranged & Conducted By Claus Ogerman
    A Leiber-Stoller Production
    Recorded in NYC, 10/26/61 (I)
    Atlantic single #2134, 2/62 (Pop #23)

21. **LOVER PLEASE** • *Clyde McPhatter*
    *(Swan)*
    Arranged By Stan Applebaum
    Produced By Shelby Singleton
    Recorded in NYC, 3/62
    Mercury single #1941, 2/62 (Pop #7)

22. **DON'T PLAY THAT SONG (YOU LIED)** • *Ben E. King*
    *(Nelson)*
    Arranged & Conducted By Jimmie Haskell
    A Leiber-Stoller Production
    Recorded in NYC, 3/2/62
    Atco single #6222, 4/62 (R&B #2, Pop #11)

23. **STRANGER ON THE SHORE**
    *(Bill/Mellin)*
    Arranged & Conducted By Claus Ogerman
    Recorded in NYC, 3/15/62 (I)
    Atlantic single #2143, 4/62 (Pop #73)

24. **ANOTHER NIGHT WITH THE BOYS**
    *(Goffin/King)*
    Arranged & Conducted By Gary Sherman
    A Leiber-Stoller Production
    Recorded in NYC, 6/28/62 (I)
    Atlantic single #2162, 10/62

25. **UP ON THE ROOF**
    *(Goffin/King)*
    Arranged & Conducted By Gary Sherman
    A Leiber-Stoller Production
    Recorded in NYC, 6/28/62 (I)
    Atlantic single #2162, 10/62 (R&B #4, Pop #5)

26. **I (WHO HAVE NOTHING)** • *Ben E. King*
    *(Mogol/Donida/Leiber/Stoller)*
    A Leiber-Stoller Production
    Recorded in L.A., 2/11/63
    Atco single #6267, 6/63 (R&B #16, Pop #29)

27. **LET THE MUSIC PLAY**
    *(Bacharach/David)*
    Arranged & Conducted By Gary Sherman
    A Leiber-Stoller Production
    Recorded in NYC, 1/22/63 (Live)
    Atlantic single #2183, 3/63

63

## Disc *Three*

1. **ON BROADWAY**
(Weil/Mann/Leiber/Stoller)
Arranged & Conducted By Gary Sherman
A Leiber-Stoller Production
Recorded in NYC, 3/12/63 (L/m)
Atlantic single #2182, 3/63 (R&B #9, Pop #9)

2. **ONLY IN AMERICA**
(Leiber/Stoller/Weil/Mann)
Arranged & Conducted By Gary Sherman
A Leiber-Stoller Production
Recorded in NYC, 4/12/63 (K)
Previously unreleased in the U.S.

3. **RAT RACE**
(Leiber/Stoller/Ik-Co)
Arranged & Conducted By Gary Sherman
A Leiber-Stoller Production
Recorded in NYC, 4/12/63 (K)
Atlantic single #2191, 5/63 (Pop #71)

4. **IF YOU DON'T COME BACK**
(Leiber/Stoller)
Arranged & Conducted By Gary Sherman
A Leiber-Stoller Production
Recorded in NYC, 4/12/63 (K)
Atlantic single #2191, 5/63 (Pop #101)

5. **I'LL TAKE YOU HOME**
(Weil/Mann)
A Leiber-Stoller Production
Recorded in NYC, 4/12/63 (K)
Atlantic single #2201, 1/63 (R&B #24, Pop #25)

6. **IN THE LAND OF MAKE BELIEVE**
(Bacharach/David)
Arranged & Conducted By Gary Sherman
A Leiber-Stoller Production
Recorded in NYC, 8/12/63 (L/m)
Atlantic single #2216, 12/63

7. **ONE WAY LOVE**
(Russell/Ragovoy)
Arranged & Conducted By Gary Sherman
A Bert Berns Production
Recorded in NYC, 12/11/63 (L/m)
Atlantic single #2225, 4/64 (Pop #56)

8. **VAYA CON DIOS**
(Russell/James/Pepper)
Arranged & Conducted By Gary Sherman
A Bert Berns Production
Recorded in NYC, 12/11/63 (L/m)
Atlantic single #2216, 12/63 (Pop #43)

9. **UNDER THE BOARDWALK**
(Resnick/Young)
Arranged & Conducted By Gary Sherman
A Bert Berns Production
Recorded in NYC, 5/21/64 (M)
Atlantic single #2237, 6/64 (Pop #4)

10. **HE'S JUST A PLAYBOY**
(Russell)
Arranged & Conducted By Teacho Wiltshire
A Bert Berns Production
Recorded in NYC, 5/21/64 (M)
Atlantic single #2253, 9/64 (Pop #111)

11. **I DON'T WANT TO GO ON WITHOUT YOU**
(Berns/Wexler)
A Bert Berns Production
Recorded in NYC, 5/21/64 (M)
Atlantic single #2237, 6/64

12. **I'VE GOT SAND IN MY SHOES**
(Resnick/Young)
Arranged & Conducted By Teacho Wiltshire
A Bert Berns Production
Recorded in NYC, 5/4/64 (M)
Atlantic single #2253, 9/64 (Pop #33)

13. **SATURDAY NIGHT AT THE MOVIES**
(Mann/Weil)
Arranged & Conducted By Teacho Wiltshire
A Bert Berns Production
Recorded in NYC, 5/4/64 (M)
Atlantic single #2262, 11/64 (Pop #18)

14. **ON BROADWAY (LIVE)**
(Weil/Mann/Leiber/Stoller)
Produced By Jerry Wexler & Tom Dowd
Recorded live at The Uptown Theatre, Philadelphia, 7/24/64 (M)
From the album *Saturday Night At The Uptown,* Atlantic #8101, 10/64

15. **THE CHRISTMAS SONG**
(Torme/Wells)
Arranged & Conducted By Richard Wess
Recorded in NYC, 10/22/64 (M)
Atlantic single #2261, 11/64

16. **AT THE CLUB**
(King/Goffin)
Arranged & Conducted By Teacho Wiltshire
A Bert Berns Production
Recorded in NYC, 11/12/64 (M)
Atlantic single #2268, 1/65 (R&B #10, Pop #43)

17. **COME ON OVER TO MY PLACE**
(Weil/Mann)
Arranged & Conducted By Bert Keyes
A Bert Berns Production
Recorded in NYC, 3/17/65 (M)
Atlantic single #2285, 4/65 (Pop #60)

18. **I'LL TAKE YOU WHERE THE MUSIC'S PLAYING**
(Barry/Greenwich)
Arranged & Conducted By Gene Page
Produced By Bert Berns & Jeff Barry
Recorded in NYC, 6/30/65 (M)
Atlantic single #2298, 7/65 (Pop #51)

19. **UP IN THE STREETS OF HARLEM**
(Berns)
Arranged & Conducted By Artie Butler
Produced By Bert Berns
Recorded in NYC, 1/27/66 (M)
Atlantic single #2336, 5/66

20. **MEMORIES ARE MADE OF THIS**
(Gilkyson/Dehr/Miller)
Arranged & Conducted By Artie Butler
Produced By Bert Berns
Recorded in NYC, 1/27/66 (M)
Atlantic single #2325, 3/66 (Pop #41)

21. **LIKE SISTER AND BROTHER**
(Stephens/Cook/Greenaway)
Arranged By Bert De Coteau
A Billy David/Cook/Greenaway Production
Recorded in the UK, date unknown (N)
Bell single #45357, 8/73 (UK #7)

22. **KISSIN' IN THE BACK ROW OF THE MOVIES**
(Macaulay/Greenaway)
Arranged by Tony King
Produced For Cookaway Productions By Greenaway-Macaulay
Recorded in the UK, date unknown (O)
Bell single #45600, 1/74 (R&B #12, UK #2)

23. **DOWN ON THE BEACH TONIGHT**
(Macaulay/Greenaway)
Arranged By Lew Warburton
A Roger Greenaway/Billy Davis Production For Cookaway Productions Ltd.
Recorded in the UK, date unknown (N)
Bell (UK) single #1381, 10/74 (UK #7)

24. **THERE GOES MY FIRST LOVE**
(Greenaway/Mason)
Arranged & Conducted By Lew Warburton
Produced By Roger Greenaway For Cookaway Productions
Recorded in the UK, date unknown (O)
Bell (UK) single #1453, 7/75 (UK #3)

25. **CAN I TAKE YOU HOME LITTLE GIRL**
(Greenaway/Mason)
Arranged & Conducted By Gerry Shury
Produced By Roger Greenaway For Cookaway Productions
Recorded in the UK, date unknown (O)
Bell (UK) single #1462, 11/75 (UK #10)

26. **YOU'RE MORE THAN A NUMBER IN MY LITTLE RED BOOK**
(Mason/Greenaway)
Arranged & Conducted By Gerry Butler
Produced By Roger Greenaway For Cookaway Productions
Recorded in the UK, date unknown (P)
Ariola (UK) single #76, 11/76 (UK #5)

# EXHIBIT C

```
 1                IN THE U. S. PATENT AND TRADEMARK OFFICE
               BEFORE THE TRADEMARK TRIAL AND APPEAL BOARD
 2

 3          In the Matter of Application Serial No. 73/807,122
                          Filed on June 16, 1989
 4                       For the Mark "THE DRIFTERS"
            Published in Trademark Official Gazette on January 8, 2002
 5

 6

 7     WILLIE B. PINKNEY,              :

 8          Opposer                    :
                                       :
 9          versus                     :     Opposition No. 91/151,984
                                       :
10     TREADWELL'S DRIFTERS,           :
       INC.,                           :
11          Applicant                  :

12    ─────────────────────────────────────────────

13                           APPEARANCES

14

15     For the Opposer        James M. Slattery, Esq.
                               BIRCH STEWART KOLASCH & BIRCH
16                             8110 Gatehouse Road, Ste. 500 East
                               P. O. Box 747
17                             Falls Church, VA   22040-0747

18

19

20

21          The testimony of CHARLIE THOMAS was taken before me,

22     Evelyn S. Perry, a notary public, pursuant to notice on

23     behalf of the opposer at the Vocal Hall of Fame, Sharon,

24     PA, on Thursday, September 18, 2003, beginning at 1:10

25     o'clock, p.m.

                        Ms. Evelyn S. Perry
                     Court & Deposition Reporter
                           P. O. Box 178
                        Girard, OH   44420
                     Telephone (330) 545-6325
```

OD000853

66

3

CHARLIE THOMAS, being called
and first duly sworn according
to law, testified as follows:

EXAMINATION OF MR. THOMAS BY MR. SLATTERY:

Q.    Would you please state your name and address?

A.    Charlie Thomas.

Q.    Mr. Thomas, before you is a document identified as
Exhibit No. 1, which is a Notice of Taking Testimonial
Deposition.  The proceeding today is trademark opposition
that Mr. Pinkney has filed against Treadwell's Drifters,
Inc., with regard to opposing the registration of the
mark, The Drifters, and you have been identified as an
individual that could testify in this proceeding.

A.    Okay.

Q.    Now the attorney for Treadwell's Drifters, Inc.,
Mr. Roxborough, was advised of the meeting by way of
notice sent to him August 27th, 2003, and he did advise me
a week ago that he would be here, but he is not present at
the deposition.

So would you please identify your familiarity with
Mr. Pinkney and how you and Bill have worked together as
The Drifters?

A.    Well, it's like it was a transferring thing between
The Original Drifters and The Drifters, and I was in the
room as an employee of The Drifters and they told me and

Ms. Evelyn S. Perry
Court & Deposition Reporter
P. O. Box 178
Girard, OH   44420
Telephone (330) 545-6325

OD000865

67

CHARLIE THOMAS/DIRECT

4

1  Doc Green and Elsbery Hops that we can bear the name, The

2  Drifters, and Bill Pinkney can bear the name, The Original

3  Drifters.

4  Q.    What was the name of that group?

5  A.    You mean from AGVA, A-G-V-A?

6  Q.    What does that acronym stand for?

7  A.    American Guild of Variety Artists.

8  Q.    Did they make an arbitration ruling with regard to

9  the use of the name?

10  A.    They ruled, the president, she told us that.

11  Q.    And was the president's name Delores Rosellia?

12  A.    Yes, she was the president.

13  Q.    Was she the individual who made the final

14  arbitration ruling?

15  A.    Yes, she did.

16  Q.    And also, was there Esther?

17  A.    Yes.  She was a representative and she was

18  standing in for Delores that day, Esther was.  It was

19  Esther Navarra.  She was representing the Union because

20  Delores was the president, but she wasn't in at that time,

21  so Esther was the one that we was sitting in front

22  of.

23  Q.    And approximately when was the arbitration ruling?

24  A.    Between '58 and '59.

25  Q.    And it is your understanding that Bill Pinkney is

Ms. Evelyn S. Perry
Court & Deposition Reporter
P. O. Box 178
Girard, OH  44420
Telephone (330) 545-6325

OD000858

# EXHIBIT D

1

IN THE UNITED STATES PATENT AND TRADEMARK OFFICE
BEFORE THE TRADEMARK TRIAL AND APPEAL BOARD

1

2

3

In the matter of trademark application Serial
No.: 75469250 for the mark BILL PINKNEY'S
ORIGINAL DRIFTERS Published in the Official
Gazette on August 30, 2005

4

5

6

ODESSA HOBBS and SINGER
MANAGEMENT CONSULTANTS, INC.,

7

       Opposers,

8

  vs.

9

WILLIE B. PINKNEY,

10

      Applicant.

Opposition No. 91168326

11

12

D E P O S I T I O N

13

WILLIE B. PINKNEY

14

WITNESS:

Thursday, June 28, 2007

15

DATE:

12:50 p.m.

16

TIME:

Sumter County Courthouse

17

LOCATION:

141 North Main Street
Sumter, South Carolina
Attorneys for Opposers

18

19

TAKEN BY:

EILEEN CROSS

20

REPORTED BY:

Court Reporter

21

22

COPY

23

24

25

WILLEY PINKNEY/DEP

28

1  record the song "There Goes My Baby"?

2      A.  As long as I was The Original Drifters I

3  could sing the songs.

4      Q.  Was "There Goes My Baby" recorded when

5  you were a member of The Drifters?

6      A.  No.

7      Q.  But you were free to record that song

8  while you were a member of The Original Drifters?

9      A.  Would you repeat that, please?  Did I

10 refuse to record that song?

11     Q.  Would you agree that the arbitration

12 decision was an attempt to compromise between the

13 parties disputing the rights to the name The

14 Drifters in an attempt to end any further

15 confusion?

16     A.  Well, I really don't know.  I don't know.

17     Q.  Did you feel it was a fair decision?

18     A.  I don't know.  I don't know.

19     Q.  But it was clear to you that after the

20 decision that you could no longer use the name The

21 Drifters, correct?

22     A.  Yes.

23     Q.  And that some other group could use the

24 name of The Drifters?

25     A.  I don't know about that.

SUZANNE HAND & ASSOCIATES, INC.  631.277.2700  888.WE DO EBTs

71

# EXHIBIT E

*Notice: This opinion is subject to formal revision before publication in the Atlantic and Maryland Reporters. Users are requested to notify the Clerk of the Court of any formal errors so that corrections may be made before the bound volumes go to press.*

## DISTRICT OF COLUMBIA COURT OF APPEALS

### No. 01-BG-298

IN RE CLAUDE W. ROXBOROUGH, RESPONDENT.

A Member of the Bar
of the District of Columbia Court of Appeals

On Report and Recommendation
of the Board on Professional Responsibility

(Submitted May 24, 2001)                    Decided June 7, 2001)

Before SCHWELB and REID, *Associate Judges*, and KERN, *Senior Judge*.

PER CURIAM: Claude W. Roxborough was admitted to the District of Columbia Bar on January 26, 1973. Since that time, he has been the subject of several disciplinary proceedings which are described in detail in the comprehensive and balanced Report and Recommendation of the Board on Professional Responsibility dated March 12, 2001, a copy of which is attached hereto and made a part hereof. *See generally In re Roxborough*, 675 A.2d 950 (D.C. 1996) (per curiam) (*Roxborough I*); *In re Roxborough*, 692 A.2d 1379 (D.C. 1997) (per curiam) (*Roxborough II*); *In re Roxborough*, 707 A.2d 57 (D.C. 1998) (*Roxborough III*). As reflected in the Board's Report, this court has suspended Roxborough from practice and has conditioned his reinstatement on proof of fitness to practice law.

Roxborough petitioned the court for reinstatement, and his petition was initially considered by Hearing Committee No. One. Before the Committee, Bar Counsel filed proposed Findings of Fact and Conclusions of Law suggesting that Roxborough be reinstated with conditions, substantially as noted below. The Hearing Committee likewise recommended reinstatement with conditions. The Board, after carefully applying the five

"Roundtree factors,"[1] concluded that "this is a close case for reinstatement because of the seriousness of the original misconduct, all of which was related to Petitioner's practice, and the fact that restitution is incomplete." Nevertheless, the Board recommended reinstatement with the following conditions:

> 1) That Petitioner implement the restitution plan attached to this Report and Recommendation, and report his progress to Bar Counsel every six months;
>
> 2) That Petitioner continue his consultation with the Lawyers' Counseling Committee and Lawyers' Practice Assistance Committee for at least three years after reinstatement, and report to Bar Counsel concerning those consultations every six months; and
>
> 3) That Petitioner be under the supervision of a practice monitor to be appointed by the Board for one year following Petitioner's entry of private practice. Petitioner shall inform the Board's Executive Attorney 60 days before undertaking private practice so that a practice monitor can be appointed. The practice monitor shall report to the Executive Attorney for the Board every three months.

We agree with the Board's view that Roxborough's misconduct was serious. We are also of the opinion that caution should be exercised in ordering reinstatement where, as in this case, substantial amounts in restitution remain to be paid. Nevertheless, the deference that we accord to the Board's recommendation, D.C. Bar R. XI, §§ 9 (g) & 16 (e), is even greater where, as here, the petitioner's position has the active support of the Office of Bar Counsel. *See, e.g., In re Goldsborough*, 654 A.2d 1285, 1288 (D.C. 1995). Accordingly, Roxborough is hereby reinstated to the practice of law, subject to the conditions described in the Board's report and quoted above.

---

[1] *In re Roundtree*, 503 A.2d 1215, 1217 (D.C. 1985).

2

*So ordered:*

3

# EXHIBIT F

*T TAB*

TRADEMARK
3306-0103L

IN THE UNITED STATES PATENT AND TRADEMARK OFFICE
BEFORE THE TRADEMARK TRIAL AND APPEAL BOARD

In the Matter of Application Serial No. 73/807,122
Filed on June 16, 1989
For the Mark "THE DRIFTERS"
Published in the Trademark Official Gazette on January 8, 2002



| | |
|---|---|
| WILLIE B. PINKNEY, | ) |
| Opposer, | ) |
| | ) |
| v. | )     Opposition No. 91/151,984 |
| | ) |
| TREADWELL'S DRIFTERS, INC., | ) |
| | ) |
| Applicant. | ) |

03-08-2004
U.S. Patent & TMOfc/TM Mail Rcpt Dt. #79

---

**OPPOSER'S TRIAL BRIEF**

---

**Box TTAB - NO FEE**
**Assistant Commissioner for Trademarks**
**2900 Crystal Drive**
**Arlington, Virginia 22202-3513**

**Attention: Trademark Trial and Appeal Board**

service mark of a well known music group that began performing in 1953 (Pinkney's deposition, Pg. 4, lines 2-3). "THE DRIFTERS" had many one number hits over the years including "White Christmas" which ABC TV's Good Morning America researched to be one of the top 10 all time best selling holiday records. See Exhibit 3 to Pinkney's deposition, page 46.

Willie B. Pinkney has continuously performed as "THE DRIFTERS" or "BILL PINKNEY'S ORIGINAL DRIFTERS" since 1953 (Pinkney's deposition, page 6, lines 17-19), his photo has appeared in all of the photographs of THE ORIGINAL DRIFTERS since 1953. (Pinkney's deposition, page 6, lines 20-21). In addition, Willie B. Pinkney's photo appeared in posters advertising performances of "THE DRIFTERS" since 1953 (Pinkney's deposition, page 7, lines 6-14. Exhibit 3 attached to Willie B. Pinkney's deposition includes many photographs of "THE DRIFTERS" over the years wherein Mr. Pinkney recognized his photo in all of the photographs advertising the performances of "THE DRIFTERS." (Pinkney's deposition, pages 8-10).

In the late 1950s an arbitration proceeding was held with regard to who could use the mark, "THE ORIGINAL DRIFTERS." The American Guild of Variety Artists issued a ruling wherein the Delores Rosellia, the president of the American Guild of Variety Artists, ruled that Willie B. Pinkney could use the mark "THE ORIGINAL DRIFTERS." (Pinkney's deposition, pages 10-11).

The musical group, "THE DRIFTERS" was recognized by many awards over the years, including being one of the first groups to be inducted into the Rock and Roll Hall of Fame.

# EXHIBIT G

**UNITED STATES PATENT AND TRADEMARK OFFICE**
Trademark Trial and Appeal Board
P.O. Box 1451
Alexandria, VA 22313-1451

vw/Faint

Mailed: May 28, 2009

Opposition No. 91168326

Singer Management
Consultants, Inc.

v.

Original Drifters, Inc.

Applicant's motion to dismiss (filed April 7, 2009) is
hereby granted as conceded. *See* Trademark Rule 2.127(a)
and Fed. R. Civ. P. 12(b).

Accordingly, the opposition is dismissed with prejudice.

*By the Trademark Trial
and Appeal Board*

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
ALEXANDRIA DIVISION

------------------------------------------------

TREADWELL'S ORIGINAL
DRIFTERS, LLC,

c/o Tina Treadwell
1327 W. Valleyheart Drive
Burbank, California  91506

            Plaintiff,

v.                                                      1:15-cv-580 LO/TCB

ORIGINAL DRIFTERS, INC.

Serve:  Ida Maxine Porter
       Registered Agent
       Original Drifters, Inc.
       9016 Marble Drive
       Las Vegas, Nevada

            Defendant.

------------------------------------------------

## DECLARATION OF TINA TREADWELL IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS

      I, Tina Treadwell, pursuant to 28 U.S.C. § 1746, being of full age, hereby declare as follows:

      1.     I am the President of Plaintiff Treadwell's Original Drifters, LLC.  I am familiar with the history of this matter and make these statements based on my own personal knowledge, in opposition to Defendant's Motion to Dismiss.

      2.     I am very familiar with the history and legacy of The Drifters.  I know that in or about November 1954, a corporation was formed -- The Drifters, Inc. -- to serve as

81

the corporate owner of "The Drifters" trademark, and to manage the group. My father, George Treadwell, was not a shareholder of the corporation upon its formation. However, in an Agreement dated January 10, 1957, two shareholders of The Drifters, Inc. sold their interests in the company to my father. I have seen that Agreement a number of times over the years. Attached hereto as Exhibit A is a true and correct copy of that Agreement.

3.   For many decades, my father managed The Drifters and used the mark to promote their recordings and performances. Bill Pinkney, since being fired from The Drifters by my father, in or about 1958, performed as The Original Drifters or Bill Pinkney's Original Drifters.

4.   Despite decades of co-existence between "The Drifters" and "The Original Drifters/Bill Pinkney's Original Drifters," Pinkney, inexplicably, filed Opposition to my company's Registration Application for the mark "The Drifters."

5.   I knew nothing about Pinkney's Opposition, however, as my family's attorney, Claude Roxborough, who had filed the Registration Application, did not inform me that it had been filed. I did not learn of the Opposition until well after it had ended with a ruling which sustained the Opposition and refused registration to Treadwell.

6.   It was only then that I learned that Claude Roxborough had completely dropped the ball. He had not, apparently, responded to Pinkney's discovery requests, did not attend any of the scheduled depositions, did not file a brief, and did not request oral argument.

7.   A review of Mr. Roxborough's record as an attorney reveals that he has been the subject of several disciplinary proceedings which eventually led to his license to

2

practice law being suspended twice -- for negligence, failure to communicate with his clients and financial misconduct.

8.    In or about 2009, I learned that Pinkney had begun making attempts to use the mark "The Drifters." For example, I was informed by a Las Vegas concert promoter, Bill Caron, that Pinkney had contacted him about supplying his venues with "The Drifters." As a result, I engaged an attorney, Dickerson Downing, to file a Cancellation Proceeding with respect to Pinkney's mark "Bill Pinkney's Original Drifters." It was also my hope that I could set right the ruling in the TTAB proceeding that had been neglected by my attorney, Claude Roxborough.


I declare under penalty of perjury that the foregoing is true and correct. Executed on January 15, 2016

TINA TREADWELL

3

83

# EXHIBIT A



GEORGE TREADWELL
BERNARD FLIEGEL
LEWIS C. LEBISH

and

THE DRIFTERS, INC.

AGREEMENT

BERNARD FLIEGEL
ATTORNEY AT LAW
250 WEST 57TH STREET
NEW YORK 19, N.Y.
PHONE PLAZA 9-0113

PLAINTIFF'S
EXHIBIT
37

Cancellation 92082165
Treadwell, Original Drifters LLC v.
Original Drifters, Inc.
Petitioner's Testimony Exhibit

TOD_0000118

85

WHEREAS, GEORGE TREADWELL, BERNARD FLIEGEL and LEWIS O. LEBISH are the sole stockholders of THE DRIFTERS, INC., each owning five (5) shares of common stock thereof; and

WHEREAS, BERNARD FLIEGEL and LEWIS O. LEBISH are withdrawing from the said THE DRIFTERS, INC. and they are selling their stock to GEORGE TREADWELL,

NOW, THEREFORE, it is agreed as follows:

1. BERNARD FLIEGEL agrees to sell to GEORGE TREADWELL and GEORGE TREADWELL agrees to purchase from him five (5) shares of the common stock of THE DRIFTERS, INC., represented by Certificate No. 3 for the sum of SIX HUNDRED AND FIFTY DOLLARS ($650.00) payable on the execution hereof and simultaneously with the transfer of the aforesaid stock.

2. LEWIS O. LEBISH agrees to sell to GEORGE TREADWELL and GEORGE TREADWELL agrees to purchase from him five (5) shares of the common stock of THE DRIFTERS, INC., represented by Certificate No. 2 for the sum of SIX HUNDRED AND FIFTY ($650.00) DOLLARS payable on the execution hereof and simultaneously with the transfer of the aforesaid stock.

3. The aforesaid BERNARD FLIEGEL shall simultaneously herewith submit his resignation as Director and Treasurer of the aforesaid corporation.

4. The aforesaid LEWIS O. LEBISH shall simultaneously herewith submit his resignation as Director and Secretary of the aforesaid corporation.

5. The said BERNARD FLIEGEL and LEWIS O. LEBISH hereby renounce, relinquish and transfer any and all rights to join a vocal group known as The Drifters, collectively or individually and to the name, THE DRIFTERS, to GEORGE TREADWELL and to THE DRIFTERS, INC. They further transfer and assign any and all right whatever have in and to any record royalties of the said THE DRIFTERS, INC. and The Drifters,

6. Simultaneously herewith the aforesaid GEORGE TREADWELL, BERNARD FLIEGEL and LEWIS O. LEBISH

TOD_0000119

86

release to and from one to the other and each of them to each other any and all claims that may have heretofore or hereafter may arise resulting from their respective interests and participation in the promotion, booking and management of the vocal group, THE DRIFTERS, INC.

7. That the said BERNARD FLIEGEL and LEWIS C. LEBISH shall upon the transfer and sale of their aforesaid stock/interests in the Corporation shall have no claim whatsoever against the corporation or George Treadwell.

8. That upon the transfer and sale of their respective interests to George Treadwell, the said George Treadwell shall have no claim whatsoever for any matter against the said BERNARD FLIEGEL and LEWIS C. LEBISH. That similarly, the said corporation shall have no claim against the said BERNARD FLIEGEL or LEWIS C. LEBISH whatsoever for any matter arising out of their participation in and with the Drifters, Inc.

IN WITNESS WHEREOF the parties have affixed their hands and seals this 10th day of January, 1957.

THE DRIFTERS, INC.

By _____
                    President

_____
GEORGE TREADWELL

_____
BERNARD FLIEGEL

_____
LEWIS C. LEBISH

87

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**Alexandria Division**

|  |  |  |
|---|---|---|
| TREADWELL ORIGINAL DRIFTERS, LLC, | ) | |
| | ) | |
| *Plaintiff,* | ) | |
| | ) | |
| v. | ) | Civil Action No. 1:15-cv-580 |
| | ) | |
| ORIGINAL DRIFTERS, INC., | ) | |
| | ) | |
| *Defendant.* | ) | |

**ORDER**

This matter comes before the Court on Defendant Original Drifters, Inc.'s motion to dismiss, Dkt. No. 7, or in the alternative for summary judgment, Dkt. No. 16. The Complaint seeks judicial reversal of a decision of the Trademark Trial and Appeal Board. For the reasons outlined below, the Court finds good cause to GRANT the Motion under the doctrine of issue preclusion.

**I.    Background**

This dispute arises over the ownership of trademark rights in the mark "The Drifters." Defendant holds a trademark for the mark "Bill Pinkney's Original Drifters." The United States Patent and Trademark Office ("USPTO") has denied Plaintiff a trademark for the mark "The Drifters" because it found Defendant began using "Bill Pinkney's Original Drifters" before Plaintiff began using "The Drifters" and because the marks are confusingly similar.

"The Drifters" refers to a doo wop group formed in 1953. The group is still in existence and performing. Since the group's inception, the members of the group have constantly been changing and there have been in total over 60 members of the group.

1

Around November 1954, The Drifters, Inc. was formed "to serve as the corporate owner
of 'The Drifters' trademark, and to manage the group." George Treadwell was not an original
shareholder of this corporation, but he purchased shares in this company on January 10, 1957.
As band members came and went over the years, George Treadwell managed and controlled the
group. George Treadwell was The Drifter's manager until his death in 1967. After his death, his
wife, Faye Treadwell, managed the group until her death. Though it is not clear from the
Complaint, it appears that presently Tina Treadwell, Faye Treadwell's daughter, manages the
group through Plaintiff Treadwell Original Drifters, LLC.

Defendant Original Drifters' predecessor in interest is Willie B. ("Bill") Pinkney.
Pinkney was one of the earliest members of The Drifters, but he was not in the original lineup.
According to Plaintiff, Pinkney was in the second, third, and fourth lineups. Pinkney was fired
from the band sometime before 1958. After being fired, Pinkney apparently formed his own doo
wop group and, believing he had rights in "The Drifters" mark, continued to use this mark in
association with his new band. Sometime around 1958-1960, The Drifters, Inc. and Bill
Pinkney, along with several of the other early members of The Drifters, went to arbitration at the
American Guild of Variety Artists ("AGVA") to settle who had the right to use the name "The
Drifters." The AGVA ruled that The Drifters, Inc. could continue to use the mark "The
Drifters," while Pinkney could use the marks "The Original Drifters" and/or "Bill Pinkney's
Original Drifters." There apparently was no discussion of formally filing for trademark rights in
any of these marks.

In 1958,[1] The Drifters, Inc. filed a lawsuit in New York state court against Circle Artists
Corp., a talent agency that was booking performances for The Original Drifters at a discounted
price. *The Drifters, Inc., v. Circle Artists Corp.*, 13 Misc.2d 778, 178 N.Y.S.2d 713 (1958).

---

[1] The parties are unsure whether the New York litigation occurred before or after the AGVA arbitration.

2

Because The Original Drifters were performing at a discounted price, The Drifters were having a difficult time booking jobs at their regular rate. *Id.* The Drifters, therefore, sought a preliminary injunction to prevent Circle Artists Corp. from acting as The Original Drifters' agent. *Id.* In a short opinion, the New York Court found that The Drifters had not met the high burden required to establish their right to a preliminary injunction. *Id.* The court also commented that The Drifters should have sued The Original Drifters rather than the band's agent. *Id.*

Several decades then passed in which the two bands coexisted without much dispute. On June 16, 1989, Treadwell's Drifters, Inc., an apparent predecessor in interest to Plaintiff, applied to the USPTO to register the mark "The Drifters." USPTO App. Serial No. 73807122. Pinkney eventually filed an opposition to this application. Opp. No. 91151984. It is unclear what happened, but action on this application was delayed for over a decade. Finally, on September 24, 2004, the Trademark Trial and Appeal Board ("TTAB") sided with Pinkney and denied Treadwell's Drifters' application. 2004 WL 2368485, at *3 (Sept. 24, 2004). As a result of this decision, the application to register "The Drifters" was abandoned on February 28, 2005.

Plaintiff claims that the TTAB sided with Pinkney because the attorney who had filed to register the mark—Claude Roxborough—did an inadequate job representing the interest of Treadwell's Drifters. According to Plaintiff, Roxborough did not inform Treadwell's Drifters or Tina Treadwell of the opposition filed by Pinkney and filed only a general denial in response to the Opposition. Treadwell's Drifters and Tina Treadwell did not learn of these events until after the TTAB had sided with Pinkney and denied the trademark application.

Meanwhile, on April 16, 1998, Bill Pinkney applied to the USPTO to register the mark "Bill Pinkney's Original Drifters." On December 28, 2005, Singer Management Consultants, Inc. and Odessa Hobbs filed an opposition to this application. Opp. No. 91168326. Odessa

3

90

Hobbs is the widow of former Drifter Elsbeary Hobbs. Odessa Hobbs claimed that Elsbeary Hobbs had rights in "The Drifters" mark that he had assigned to her. Odessa Hobbs sought to assign those rights she had received to Singer Management. This opposition was dismissed by the TTAB on May 28, 2009. Shortly thereafter, on July 7, 2009, the USPTO issued the registration for "Bill Pinkney's Original Drifters." The rights in this mark were subsequently transferred from Bill Pinkney to Defendant Original Drifters, Inc.

Around March of 2010, Plaintiff applied to cancel the registration for "Bill Pinkney's Original Drifters." Cancellation No. 92052155. The TTAB dismissed this cancellation petition on March 5, 2015. 2015 WL 1276593, at *1 (Mar. 5, 2015).[2] Plaintiff now appeals the TTAB's dismissal of its cancellation petition. Plaintiff asks this Court to reverse that decision and to order that the USPTO deny registration of the mark "Bill Pinkney's Original Drifters."

## II.    Standard of Review

Defendant filed a motion to dismiss pursuant Rule 12(b)(6) or, in the alternative, for summary judgment, pursuant to Rule 56 of the Federal Rules of Civil Procedure. A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of the complaint. *Republican Party of N.C. v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992). The Court must accept as true all well-pleaded factual allegations and draw all reasonable inferences in Plaintiff's favor. *Tobey v. Jones*, 706 F.3d 379, 383 (4th Cir. 2013). When additional material is considered by the court which is outside the pleadings, the court should treat the motion to dismiss as one for summary judgment. *See* Fed.R.Civ.P. 12(b). Rule 56(c) provides that a moving party is entitled to summary judgment "if the pleadings, depositions, answers to

---

[2] It should also be noted that Plaintiff Treadwell Original Drifters, LLC made another attempt to register the mark "The Drifters" in 2007. On October 19, 2015, the USPTO suspended review of Plaintiff's application to register this mark "because of a likelihood of confusion with the mark in U.S. Registration No. 3649096 ('BILL PINKNEY'S ORIGINAL DRIFTERS')."

4

interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). In order to survive a motion for summary judgment, the plaintiff must establish the existence of a genuine issue of material fact by presenting evidence upon which a jury could reasonably find in his favor. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

The affirmative defenses of res judicata and collateral estoppel can, in limited circumstances, be properly reviewed under the Rule 12(b)(6) standard. *Field v. GMAC LLC*, 660 F. Supp. 2d 679, 684 (E.D. Va. 2008) *aff'd*, 328 F. App'x 873 (4th Cir. 2009) and *aff'd*, 328 F. App'x 873 (4th Cir. 2009); *see also Davani v. Virginia Dep't of Transp.*, 434 F.3d 712, 720 (4th Cir. 2006). This is proper only if the affirmative defense "clearly appears on the face of the complaint." *Richmond, Fredericksburg & Potomac R. Co. v. Forst*, 4 F.3d 244, 250 (4th Cir. 1993). However, "when entertaining a motion to dismiss on the ground of res judicata, a court may take judicial notice of facts from a prior judicial proceeding when the res judicata defense raises no disputed issue of fact." *Andrews v. Daw*, 201 F.3d 521, 524 n.1 (4th Cir. 2000)

The Court finds the affirmative defense of issue preclusion does not appear on the face of the complaint. Because the Court considered additional material outside the pleadings, it will apply the summary judgment standard.

### III.    Discussion

Defendant asserts three arguments for why this case should be dismissed or summary judgment should be granted in its favor. First, Defendant argues that the Complaint should be dismissed because Plaintiff has not specifically identified what new evidence it will present to this Court that was not already presented to the TTAB. Second, Defendant argues that the

doctrine of issue preclusion requires that the Complaint be dismissed. Third, Defendant argues that doctrine of claim preclusion requires that the Complaint be dismissed. The Court finds the Complaint can be dismissed on the issue of issue preclusion alone. While the Court does not find Defendant's other arguments persuasive, the Court declines to address them now.

### A. Issue Preclusion

The doctrine of issue preclusion is "straightforward: Once a court has decided an issue, it is 'forever settled between the parties.'" *B&B Hardware, Inc. v. Hargis Indus.*, 135 S.Ct. 1293, 1302 (2015) (quoting *Baldwin v. Iowa State Traveling Men's Assn.*, 283 U.S. 522, 525 (1931)). The general rule of issue preclusion provides that "[w]hen an issue of fact or law is actually litigated and determined by a valid and final judgment, and the determination is essential to the judgment, the determination is conclusive in a subsequent action between the parties, whether on the same or a different claim." *Id.* at 1303 (citing Restatement (Second) of Judgments § 27, p. 250 (1980)). This general rule does not apply when appellate review is available. Restatement (Second) of Judgments § 28, p. 273. The Fourth Circuit has laid out the elements of issue preclusion, or collateral estoppel, as follows: "(1) the issue or fact is identical to the one previously litigated; (2) the issue or fact was actually resolved in the prior proceeding; (3) the issue or fact was critical and necessary to the judgment in the prior proceeding; (4) the judgment in the prior proceeding is final and valid; and (5) the party to be foreclosed by the prior resolution of the issue or fact had a full and fair opportunity to litigate the issue or fact in the prior proceeding." *In re Microsoft Corp. Antitrust Litig.*, 355 F.3d 322, 326 (4th Cir. 2004). Issue preclusion works to bind not only a party who had a "full and fair opportunity to litigate the issue," but also a third-party who is in privity with the party that fully litigated the issue in the previous action. *Londono-Rivera v. Virginia*, 155 F. Supp. 2d 551, 565 (E.D. Va. 2001).

6

"To be in privity with a party to a former litigation, the non-party must be so identified in interest with a party to former litigation that he represents precisely the same legal right in respect to the subject matter involved." *Martin v. Am. Bancorporation Ret. Plan*, 407 F.3d 643, 651 (4th Cir. 2005). The Fourth Circuit recognizes three "categories of non-parties who will be considered in privity with a party to the prior action and who will therefore be bound by a prior adjudication: (1) a non-party who controls the original action; (2) a successor-in-interest to a prior party; and (3) a non-party whose interests were adequately represented by a party to the original action." *Id.*

Plaintiff's Complaint calls on this Court to determine just one issue: whether Plaintiff has demonstrated ownership rights in the mark "The Drifters" that are prior to those of Defendant's in the mark "Bill Pinkney's Original Drifters." The TTAB determined in its ruling on Cancellation 92052155 that Defendant Original Drifters, "through its predecessor Bill Pinkney, began to use THE DRIFTERS mark in 1953, thereby acquiring rights in the mark," and that Plaintiff "has failed to demonstrate, by a preponderance of the evidence ownership rights in the mark THE DRIFTERS that are prior to those of Respondent's predecessor in interest Bill Pinkney." 2015 WL 1276593. Plaintiff appeals this determination.

There are four prior rulings that Defendant insists require this Court to dismiss the current action under the doctrine of issue preclusion: first, the TTAB's 2015 decision to dismiss Plaintiff's cancellation petition; second, the TTAB's 2004 decision to sustain Bill Pinkney's opposition to Treadwell's Drifters' application to register the mark "The Drifters"; third, the TTAB's May 28, 2009, decision to deny the opposition to Bill Pinkney's pending application to register "Bill Pinkney's Original Drifters;" and fourth, the Supreme Court of New York's 1958 decision in *The Drifters, Inc. v. Circle Artists Corp.*, 178 N.Y.S.2d 713 (N.Y. Sup. Ct. 1958).

7

94

The Court does not believe that the first, third, or fourth of these prior proceedings has a collateral estoppel effect on the current action. However, the Court does find the TTAB's 2004 decision does have such an effect. Accordingly, the Court will address that proceeding, and that proceeding alone, below.

### 1. The TTAB's 2004 Decision to Sustain Bill Pinkney's Opposition to Treadwell's Drifters' Application to Register the Mark "The Drifters"

On June 16, 1989, Treadwell's Drifters, Inc. applied to the USPTO to register the mark "The Drifters." USPTO App. Serial No. 73807122. Bill Pinkney filed an opposition to this application. Opp. No. 91151984. On September 24, 2004, the TTAB sided with Pinkney and denied Treadwell's Drifters' application. 2004 WL 2368485, at *3 (Sept. 24, 2004). Treadwell's Drifters did not appeal this decision. The Court will address the five issue preclusion elements with respect to this decision in turn.

### (a) Whether the Issue or Fact is Identical to the One Previously Litigated

In the September 24, 2004, ruling, the TTAB concluded that Bill Pinkney had established, by a preponderance of the evidence, that he "has continuously used the service marks The Original Drifters and Bill Pinkney and the Original Drifters since long prior to applicant's filing date, the earliest date to which applicant is entitled to rely." 2004 WL 2368485, at *3. The Plaintiff asks this Court to determine whether it has rights in The Drifters mark that are prior to those held by Defendant in the mark Bill Pinkney's Original Drifters. Thus, at issue in both that action and the current action is whether Defendant, through its predecessor-in-interest Bill Pinkney, has priority trademark rights. Accordingly, the first element of issue preclusion is satisfied.

8

95

*(b) Whether the Issue or Fact Was Actually Resolved in the Prior Proceeding*

In its 2004 decision, the TTAB concluded that Bill Pinkney "was entitled to prevail on the grounds of priority." *Id.* Treadwell's Drifters did not appeal this ruling. Thus, it appears the second element of issue preclusion has been satisfied.

Plaintiff, however, argues that the issue of priority was not actually litigated and resolved in the TTAB's 2004 decision. Specifically, Plaintiff asserts that the issue was not actually litigated because Treadwell's Drifters' attorney, Claude Roxborough, failed to represent Treadwell's Drifters' interest. Roxborough did not file a brief opposing the opposition petition or request oral argument. Nor did he did take any depositions or respond to Bill Pinkney's requests for admissions. Because of Roxborough's failures, almost all the evidence before the TTAB was Bill Pinkney's, which clearly demonstrated Pinkney had been using the name "The Original Drifters" since the mid-1950s. The only evidence that Treadwell's Drifters had used the mark "The Drifters" was the trademark application filed on June 16, 1989.

The parties have cited competing cases on the issue of whether a case that has not been fully litigated "with particular care" should have a collateral estoppel effect on later litigation. Defendant argues that there is no right to effective assistance of counsel in a civil case. The Fourth Circuit has acknowledged this principle of law at least once, in a per curiam opinion. *See Hopper v. Clemens*, 172 F.3d 863 (Table) (4th Cir. 1999) ("Relief in a civil case on the basis of ineffective assistance of counsel is a contractual matter between attorney and client and not within the jurisdiction of this Court in the present case."). Other Circuits have also acknowledged that "[t]he proper remedy for inadequate representation in a civil case lies not in dragging the opposing party through another trial, but rather in a malpractice action against the offending attorney." *Stanciel v. Gramley*, 267 F.3d 575, 581 (7th Cir. 2001). Following this

9

principle, the Court could conclude that rather than forcing Defendant to re-litigate the issue of priority, Plaintiff should have filed a malpractice suit against Claude Roxborough.

Plaintiff, in response, cites a line of bankruptcy cases that require this Court to take pause. These cases hold "a state court default judgment does not give rise to an argument of collateral estoppel because it is not the result of actual litigation of the issues between the parties." *In re Stankovich*, 171 B.R. 27, 29 (Bankr. E.D. Va. 1994); *See also In re Raynor*, 922 F.2d 1146 (4th Cir. 1991). The Restatement (Second) of Judgments similarly states that "a judgment entered by confession, consent, or default" does not have a preclusive effect on subsequent litigation because "none of the issues is actually litigated." Restatement (Second) of Judgments § 27 (1982). Plaintiff, however, has not cited a case in which this principle has been applied when a party appeared, but was unsatisfied with his or her counsel's representation. Plaintiff essentially asks this Court to recognize "an absence-of-lawyer or ineffective assistance of trial counsel exception" to the rule of collateral estoppel. *See Richardson v. Miller*, 101 F.3d 665, 670 (11th Cir. 1996) (Cox, J., dissenting). Finding no legal basis to do so, the Court declines to recognize such an exception now.

The Court, therefore, finds that the issue of priority was actually litigated in the prior proceeding because Treadwell's Drifters had an opportunity to file a brief and submit their own evidence to the TTAB through Roxborough. Because the TTAB actually settled the issue of priority the Court finds the second element of issue preclusion is satisfied.

#### (c) Whether the Issue or Fact was Critical and Necessary to the Judgment in the Prior Proceeding

Bill Pinkney filed his opposition on the grounds that he had priority rights in the mark "Bill Pinkney's Original Drifters" and that the applicant's use of "The Drifters" mark would likely cause consumer confusion because the two marks were so similar. *See* Opp. 91151984.

10

The TTAB had to make two critical determinations in deciding whether to sustain the Opposition: whether Bill Pinkey had established priority of use and whether consumers were likely to be confused by the marks. *See also* McCarthy on Trademarks and Unfair Competition, 4th ed. § 16:1 ("The basic rule of trademark ownership in the United States is priority of use."); *Emergency One, Inc. v. American Fire Eagle Engine Co., Inc.*, 332 F.3d 264, 267 (4th Cir. 2003). Thus, determining whether Bill Pinkney had priority rights was critical and necessary to determining whether to sustain Opposition No. 91151984 and whether to deny Treadwell's Drifters' application to register "The Drifters" mark. Accordingly, the third element of issue preclusion has been satisfied here.

### (d) Whether the Judgment in the Prior Proceeding Was Final and Valid

"[F]or purposes of issue preclusion, a final judgment includes any prior adjudication of an issue in another action that is determined to be sufficiently firm to be accorded conclusive effect." *Rye v. U.S. Steel Min. Co.*, 856 F. Supp. 274, 278 (E.D. Va. 1994) (citing the Restatement (Second) of Judgments, § 13). The Supreme Court recently reaffirmed in *B&B Hardware, Inc. v. Hargis Industries, Inc.* that a determination by an administrative tribunal acting in a judicial capacity is a valid and final judgment for the purposes of issue preclusion. 135 S.Ct. 1293, 1303 (2015). The TTAB, an administrative tribunal, was acting in a judicial capacity when it sustained Bill Pinkney's opposition petition. Treadwell's Drifters did not appeal that decision and the Court has no reason to conclude that the TTAB's adjudication was not "sufficiently firm to be accorded conclusive effect." Accordingly, the Court concludes that the TTAB's decision to sustain Bill Pinkney's opposition and deny Treadwell's Drifters' trademark application was a valid and final judgment, thus satisfying the fourth element of issue preclusion.

11

98

*(e) Whether the Party to be Foreclosed Had a Full and Fair*
*Opportunity to Litigate the Issue in the Prior Proceeding*

The final element of issue preclusion requires that the party to be bound, Plaintiff Treadwell Original Drifters, Inc., must have fully litigated the relevant legal issue in the prior action or be in privity with a party who did.  Successors-in-interest are considered to be in privity with their predecessors-in-interest. *Martin v. Am. Bancorporation Ret. Plan*, 407 F.3d 643, 651 (4th Cir. 2005).  Plaintiff Treadwell Original Drifters was not a party to Opposition No. 91151984.  Rather, an entity called Treadwell's Drifters Inc. was the applicant in that action. Defendant alleges that Treadwell's Drifters Inc. is a predecessor-in-interest to the Plaintiff. Plaintiff has not contested this allegation and in fact seems to concede this point.  In addition, as discussed in the context of the second element, Treadwell's Drifters had a full and fair opportunity to litigate the issue, even though Claude Roxborough did not take full advantage of this opportunity.  Accordingly, the Court concludes that the fifth element of issue preclusion is satisfied because Plaintiff is in privity with Treadwell's Drifters Inc., a party that had a full and fair opportunity to litigate the issue of priority.

All five element of issue preclusion have been satisfied as to the TTAB's 2004 decision to sustain Opposition No. 91151984.  Because all five elements have been satisfied, issue preclusion prevents the parties from re-litigating the issue of priority.  Because priority is the only issue Plaintiff has asked this Court to rule on, the Court finds good cause to dismiss this action under the doctrine of issue preclusion.

### III.   Conclusion

Finding good cause to do so, the Court ORDERS that the Motion to Dismiss or, in the alternative, for Summary Judgment is GRANTED.  It is further ORDERED that, pursuant to

Rule 56 of the Federal Rules of Civil Procedure, the Complaint is DISMISSED WITH

PREJUDICE.

January 28, 2016
Alexandria, VA

/s/

Liam O'Grady
United States District Judge

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
ALEXANDRIA DIVISION

-------------------------------------------------- X
                                                   :
TREADWELL ORIGINAL DRIFTERS, LLC,  :        NOTICE OF APPEAL
        Plaintiff,                                 :
                                                   :   Case No. 1:15- cv -580 LO/TCB
                                                   :
        v.                                         :
                                                   :
ORIGINAL DRIFTERS, INC.,                           :
        Defendant.                                 :
                                                   :
-------------------------------------------------- X

        Notice is hereby given that Treadwell Original Drifters, LLC, Plaintiff, in the
above named case, hereby appeals to the United States Court of Appeals for the Fourth
Circuit from the Order entered in this action on the 28th day of January, 2016.

                                        Respectfully submitted,


                                        _____/s/_____
                                        F. Joseph Brinig (VSB No. 17928)
                                        6409 Washington Blvd.
                                        Arlington, VA 22205
                                        (703) 282-3435 (Telephone)
                                        (703) 534-7831 (Facsimile)
                                        fjb@his.com


                                        _____/s/_____
                                        Cindy D. Salvo
                                        The Salvo Law Firm, P.C.
                                        185 Fairfield Avenue, Suite 3C/3D
                                        West Caldwell, New Jersey  07006
                                        (973) 226-2220 (Telephone)
                                        (973) 900-8800 (Facsimile)
                                        csalvo@salvolawfirm.com

                                        Attorneys for Plaintiff,
Dated: February 24, 2016                Treadwell Original Drifters, LLC

101

<u>Certificate of Service</u>

I hereby certify that on the 24th day of February 2016, Treadwell Original Drifters, LLC's Notice of Appeal was filed electronically and also served by first class mail on:

James M. Slattery, Esq.
8110 Gatehouse Road, Suite 100 East
Falls Church, Virginia 22040

_____/s/_____
F. Joseph Brinig

2